MINERVA INMAN, ADMINISTRATRIX OF WALTER INMAN, v. GULF REFINING COMPANY, HECTOR McMILLAN AND GORDON McMILLAN.

(Filed 23 November, 1927.)

1. **Principal and Agent—Contracts—Scope of Employment—Negligence—Respondeat Superior—Independent Contractor.**

Where under a contract with a local dealer a refining company is to supply the latter with gasoline to be sold at a price to be named by it with a fixed compensation to the dealer, the latter to effect delivery to his customers at his own expense: *Held*, the refining company is not responsible in damages for the negligent death of plaintiff's intestate caused by the dealer's delivering to him for repairs a gasoline tank partly filled with gasoline, it having no control over or interest in the means or methods used in respect to the act complained of, or falling within the scope of the dealer's employment or within the principle usually applying in matters of agency.

2. **Judgments—Verdict—Motion to Set Aside Verdict—Consent—Discretion of Court—Interest—Appeal and Error.**

A defendant by consenting to plaintiff's motion to set aside the answer to an issue, may not insist thereon as a matter of legal right as against a codefendant who objects and has an interest therein.

APPEAL by plaintiff and the individual defendants from *Barnhill, J.,* at April Term, 1927, of ROBESON.

The plaintiff brought suit to recover damages for the death of her intestate alleged to have been caused by the negligence of the defendants. On 1 April, 1920, the Gulf Refining Company entered into a written contract with E. B. McMillan. The plaintiff alleged that E. B. McMillan was the agent of the Gulf Refining Company and

Hector McMillan and Gordon McMillan its employees; that on 8 December, 1925, the defendants carried to the intestate's blacksmith shop for repairs a gasoline tank which was placed and borne upon a truck; that the tank exploded and killed the intestate while he was at work on it; that the defendants had negligently left gasoline in the tank, and that their negligence was the proximate cause of the explosion and death. The following verdict was returned:

1. Was the death of Walter Inman caused by the negligence of the defendant, Gordon McMillan? Answer: Yes.

2. Was the death of Walter Inman caused by the negligence of the defendant, Hector McMillan? Answer: Yes.

3. Was the death of Walter Inman caused by the negligence of the defendant, Gulf Refining Company? Answer: No.

4. Did negligence on the part of Walter Inman contribute to his death? Answer: No.

5. Did Walter Inman assume the risk of being killed by the explosion of the tank? Answer: No.

6. What damage, if any, is the plaintiff entitled to recover? Answer: $4,500.

7. Is the liability of the defendant, Gulf Refining Company, secondary? Answer: Yes.

The material parts of the contract between the Gulf Refining Company and E. B. McMillan are as follows:

"Party of the first part (Gulf Refining Company) agrees to ship to party of the second part (E. B. McMillan) lubricating oils, illuminating oils, and gasoline, in carload lots, which shipments are to be received by the party of the second part and sold by him at prices named by party of the first part—all sales of such oils to be for cash, if on credit, only to such parties as are acceptable to party of the first part and upon terms authorized by them.

"Where first party orders second party to sell on credit, second party shall deliver a signed receipt, or in case the oil is shipped out of the city of Lumberton, N. C., second party will deliver an original bill of lading from railroad company, which shall constitute a receipt.

"Party of the second part is to be responsible to the party of the first part for all goods shipped to him and is to account for all sales in accordance with above paragraph, sending twice weekly a statement showing all sales made and remitting twice weekly to party of the first part, at their Atlanta, Ga., office, all moneys received by him from sale of above-named goods. Second party shall render to party of the first part statement on the first day of each month, showing in detail the goods on hand.

"Second party agrees to pay all drayage and delivery charges, and collect all empty drums and barrels and ship same back to first party as ordered.

"It is strictly understood that all goods shipped party of the second part by party of the first part are the property of the first part until sold.

"Lumberton, N. C. Circuit points to be made by wagons are as follows: Fairmont, Pembroke, Rowland, Raynham, Red Springs, Buie, Tolarsville, St. Paul, McDonald, Tar Heel, Proctorville, Lowe, Powers, Bladenboro, Richardson.

"On or about the first of each month, party of the first part will send to party of the second part a statement showing the sales made by party of the second part during the preceding month, remitting party of the second part commission earned on such sales, said commission to be 2 cents per gallon on kerosene and gasoline when sold in milk cans or tank wagons, and 2 cents per gallon when sold in original package such as drums, barrels, cans or cases, and 10 per cent of invoice price on lubricating oils, where oil is delivered by party of the second part without payment of railroad freight charges. Where shipments are made by railroad, commission to party of the second part is to be 2 cents per gallon on kerosene and gasoline and .... per cent of the invoice on lubricating oils, and party of the first part is to allow party of the second part amount of freight paid on such shipments.

"Party of the first part reserves the privilege of making shipments from its stock of goods in hands of second party, and second party agrees to fill such orders as may be sent them by party of the first part—no commission to be allowed party of the second part on such shipments, but first party will pay second party 25 cents per barrel for drayage and clerical work in making such shipments."

Judgment. Appeal as noted upon errors assigned.

*Britt & Britt and E. J. and L. J. Britt for plaintiff.*
*Varser, Lawrence, Proctor & McIntyre for Gulf Refining Company.*
*Dickson McLean and H. E. Stacy for Hector McMillan and Gordon McMillan.*

## PLAINTIFF'S APPEAL.

ADAMS, J. Interpreted in the light of his Honor's instructions the verdict established the written instrument executed by the Gulf Refining Company and E. B. McMillan as the only contract under which McMillan Brothers conducted their business. Whether under this con-

tract McMillan Brothers were servants or employees of the Gulf Refining Company is the principal question in the plaintiff's appeal. On this point the jury were instructed to answer the third issue in the negative if they found from the evidence that the business of McMillan Brothers was carried on pursuant to and in accordance with the written contract—an instruction in substance that according to its provisions they were not employees of the codefendant.

In considering the question we need not enter into an extended discussion of the law of agency or of the relation existing between master and servant. It is generally conceded that an independent contract is a limitation upon the master's liability—that is, that the person who lets the contract, having no control over the contractor's employees, is not liable for their torts. Street's Foundations of Legal Liability, Vol. 2, p. 471. It is for this reason that the right of control, or interest in the means by which the work is done, is a test frequently applied in determining whether the person employed is really a servant or whether he acts in some other capacity. *Craft v. Timber Co.,* 132 N. C., 152; *Young v. Lumber Co.,* 147 N. C., 26; *Beal v. Fibre Co.,* 154 N. C., 147; *Denny v. Burlington,* 155 N. C., 33; *Gadsden v. Craft,* 173 N. C., 418; *Simmons v. Lumber Co.,* 174 N. C., 220; *Aderholt v. Condon,* 189 N. C., 748; *Greer v. Construction Co.,* 190 N. C., 632; *Drake v. Asheville, ante,* 6. The principle has been concisely stated as follows: "The accepted doctrine is that, in cases where the essential object of an agreement is the performance of work, the relation of master and servant will not be predicated, as between the party for whose benefit the work is to be done and the party who is to do the work, unless the former has retained the right to exercise control over the latter in respect to the manner in which the work is to be executed." Labatt's Master and Servant, Vol. 1 (2 ed.), p. 222, sec. 64.

It is important that we bear in mind the limitation of the agreement. E. B. McMillan was named as the second party, but Gordon McMillan testified that McMillan Brothers were the beneficial parties and that they transacted the business. They were to be responsible for all goods shipped them and twice weekly to account for all sales; they were to pay all drayage and delivery charges, to return all empty drums and barrels, to sell at fixed prices, and to retain a designated compensation. The goods shipped were to remain the property of the Gulf Refining Company until they were sold; but the trucks by which they were transported and delivered were the property of McMillan Brothers. The contract did not create such relation between the Gulf Refining Company and its codefendants as would subject the former to

liability on the theory that the act resulting in the intestate's death was an act performed in the course and scope of a servant's employment.

Other courts have had occasion to construe the contract in question. In *Phipps v. Gulf Refining Company,* 103 S. E. (Ga.), 472, a verdict for the defendant was directed and on appeal the judgment was affirmed. The contract again came before the Court of Appeals of Georgia in *Gulf Refining Company v. Harris,* 117 S. E., 274. As it did not appear that the Gulf Refining Company had retained any control over the means or methods to be employed by the local dealer the court held that there was no liability growing out of the relation of master and servant. It was said that the relation does not exist where the employer merely engages another to do a particular work, but retains no right or power to direct or control the method by which the result is to be accomplished. In *Sams v. Arthur et al.,* 133 S. E. (S. C.), 205, it appeared that a contract identical with the one before us was executed by the Gulf Refining Company and W. D. Arthur. The plaintiff brought suit against both parties to recover damages caused by a collision between a milk wagon and an oil truck belonging to Arthur. The Court construed the contract as creating the relation of principal and factor and concluded that the Gulf Refining Company was not liable under the doctrine of respondeat superior or of that expressed in the maxim, *Qui facit per alium facit per se,* and that a verdict should have been directed in favor of the Refining Company.

As to the question under discussion, it is immaterial whether McMillan Brothers were factors or independent contractors, for in neither event as a general rule could they have occupied the technical relation to their codefendant of servants or employees.

The plaintiff contends, however, that they were independent contractors and that the inherent danger of the business in which they were engaged made the case an exception to the rule and prohibited the Refining Company from contracting against its liability. The liability of the owner or proprietor for the acts of the independent contractor may be determined by the four rules laid down by Judge Cooley in his work on Torts and quoted in *Hunter v. R. R.,* 152 N. C., 682. Obviously the Refining Company is not liable by reason of the operation of the last two; as to the first it was in no wise responsible for the repair of the tank and therefore did not cause "the precise act to be done which occasioned the injury"; and as to the second it may be said that the alleged contractors were not engaged in the prosecution of the business contemplated by the contract.

The judge submitted to the jury the plaintiff's contention that there was an implied agency which, without regard to the contract, established the liability of the Refining Company, but this contention was not accepted by the jury evidently because they were - convinced that the contract was the only agreement between the parties.

In the plaintiff's appeal we find

No error.

### APPEAL OF McMILLAN BROTHERS.

ADAMS, J. The plaintiff in apt time made a motion that the verdict be set aside on the ground that the answer to the third issue was against the weight of the evidence. The motion was denied. McMillan Brothers, defendants, consented that the entire verdict be set aside, and now present the question whether they were entitled to have their motion granted as a matter of law. The Gulf Refining Company did not consent; its interest in the verdict was no less pronounced than that of the codefendants; and the latter had no legal right by consenting to the plaintiff's motion to deprive the Gulf Refining Company of the finding which exempted it from liability. On the appeal of the individual defendants the judgment is

Affirmed.