STATE OF NORTH CAROLINA ON RELATIONSHIP OF THE EMPLOYMENT
   SECURITY COMMISSION OF NORTH CAROLINA v. GEORGE W.
   TINNIN, C. C. SPIVEY, C. W. BANNERMAN, C. E. HODGIN, J. HALL
   REABEN, McALLISTER OIL COMPANY, INC., AND R. P. ALLEN.

(Filed 17 July, 1951.)

**Master and Servant § 58—Consignee held not employing unit under Employment Security Act.**

Under a contract by which consignor agrees to deliver such quantity of
its products as consignee might desire for sale at consignee's place of
business at the price stipulated by the consignor, but which does not re-
quire consignee to devote all of his efforts to the sale of consignor's prod-
ucts or to sell any specific amount thereof, nor restrict consignee's right to
sell other products which are noncompetitive with the products of con-
signor, *held:* the consignee is engaged in an individual business of his own
free from control by the consignor and conducted outside consignor's places
of business, and therefore the consignee, having in his employ less than
eight individuals, cannot be held an employing unit as an independent
contractor under the consignor. G.S. 96-8 (f) (8) prior to its repeal
18 March, 1947.

APPEAL by defendants from *Frizzelle, J.,* October Term, 1950, of
CUMBERLAND.

This is a proceeding brought by the Employment Security Commission
of North Carolina against George W. Tinnin and others, to determine the
liability of the defendants under G.S. 96-8 (f) (8) of the Employment
Security Law, which subsection became effective 13 March, 1945, and
was repealed 18 March, 1947.

When this cause came on for hearing before the Deputy Commissioner
of the Employment Security Commission of North Carolina, certain
stipulations were entered into, which summarily stated were as follows:

It was agreed by and between counsel representing the plaintiff and the
respective defendants (1) that a record should be made only in the case
against the defendant George W. Tinnin, and that the decision based
upon the record in his case would be binding on the other defendants;
(2) that The Texas Company, a corporation, is and was an employer
under the provisions of the Unemployment Compensation Law during
the years 1945, 1946 and 1947, and that said corporation was required
to pay taxes or contributions upon wages paid its employees in the State
of North Carolina during said years; (3) that The Texas Company was
engaged in the business of distributing, at wholesale, petroleum products
in the State of North Carolina through its own facilities and by means
of salaried employees carried upon its pay roll during the years 1945,
1946 and 1947; (4) that none of the consignee defendants had in his or
its employ as many as eight individuals during the calendar years 1945,

1946 and 1947; and (5) that there is no dispute as to the amount of taxes assessed if it is determined that the various employing units are covered under the provisions of the Unemployment Compensation Law, now the Employment Security Law.

The facts are not in dispute. The agreement between The Texas Company, the consignor, and George W. Tinnin, the consignee, called for the delivery of such quantity of the consignor's products as the consignee might desire for sale at his place of business in Fayetteville, North Carolina. The consignee was obligated to sell the petroleum and other products consigned to him, at prices fixed by the consignor to such customers as the consignee might select, either for cash, or on credit properly authorized, except the consignee was authorized to extend credit (a) to any customer he chose on his own account and (b) to consignor's customers in excess of credit limits approved by the consignor; provided that, in either instance, the consignee should pay the consignor cash, on demand, for sales of products so made. The consignee was paid specified commissions on all sales of consigned products. Title to unsold goods remained in the consignor. The consignee leased the bulk plant used in the operation of his business from the consignor, but he was obligated to bear all expenses, furnish trucks and any other equipment which he might require in the conduct of his business, furnish all help and assume full direction and control over all his employees, and to pay all contributions for workmen's compensation and unemployment insurance respecting such employees. The agreement which was subject to cancellation upon five (5) days written notice by either party, did not bind the consignee to devote all his efforts to the sale of the products of the consignor; nor was there any restriction upon the consignee's right to sell other products that were noncompetitive with the consignor's products, nor was the consignee obligated to sell any specified quantity of the consignor's goods. In fact, the consignee could not obtain fuel oil from the consignor during the period involved, and purchased such oil from various companies and distributed the same in his territory.

Upon these facts, the hearing commissioner found as a fact that during the period involved the consignor distributed gasoline, oil and other petroleum products as a part of its usual trade or business, and concluded as a matter of law that the defendant consignee was an employer within the meaning of Section 96-8 (f) (8) of the Employment Security Law (during the period from 13 March, 1945, through 17 March, 1947), by reason of the terms of the consignee's agreement referred to herein, under the consignor, and entered an order directing the defendant Tinnin and the other defendants to pay the contributions assessed on wages paid their respective employees during the period involved herein.

The defendant, Tinnin, duly filed exceptions to the pertinent findings of fact which were overruled. He appealed to the full Commission, which likewise overruled the exceptions and adopted the opinion of the hearing Commissioner as the opinion of the Commission. Upon appeal to the Superior Court, the trial Judge upheld the ruling of the Commission on each of the defendant's exceptions and affirmed the opinion of the Commission, and accordant therewith, entered judgment against each of the defendants.

The defendants appealed to the Supreme Court, assigning error.

*Rose & Sanford for appellants.*

*W. D. Holoman, R. B. Billings, and D. G. Ball for Employment Security Commission, appellee.*

DENNY, J.   The statute under which the plaintiff seeks to collect certain contributions from the defendant, which it contends are due under the so-called contractor's clause, formerly known as G.S. 96-8 (f) (8), now repealed, reads as follows: " 'Employer' means (8) Any employing unit, which contracts with or has under it any contractor or subcontractor for any employment which is part of its usual trade, occupation, profession, or business, and each such contractor or subcontractor irrespective of the place of performance of contract; provided, the employing unit would be an employer by reason of any other paragraph of this subsection if it were deemed to employ each individual in the employ of each such contractor or subcontractor for each day during which such individual is engaged in performing such employment . . ."

The Supreme Court of New Jersey in the case of *Texas Company v. New Jersey Unemployment Compensation Commission,* 132 N.J.L. 362, 40 A. 2d 574, in considering the precise point that is before us, under a statute identical with ours, pointed out that the statute does not include within its provisions every contract that may be entered into by and between individuals, firms and corporations. It applies only to contracts with "any contractor or subcontractor for any employment which is part of its usual trade, occupation, profession, or business." It will be noted that our statute, G.S. 96-8 (g) (1), defines the term "employment" as "service, including service in interstate commerce . . . performed for remuneration under any contract of hire, written or oral, expressed or implied." Thus it would seem that the employment contemplated by the statute was to be one for personal services rendered for remuneration. And the term "wages" is defined in the statute G.S. 96-8, subsection (n), as "all remuneration payable for personal services, including commissions and bonuses . . ."

In the above New Jersey case the Court said: "It seems to us, therefore, that the kind of a contract contemplated and meant by the statute must be one for work or services which would ordinarily be performed by an employee, but which is being farmed or contracted out. The contract between prosecutor and the Heights was for their mutual advantage in the sale and distribution of the produce of prosecutor and was not intended to be, nor was it in fact, a contract 'for any employment' as intended or defined by the statute. It was selling goods by a certain method well recognized and customary in merchandising businesses. It provided for the payment of commissions for the sale of goods but was not a contract for 'personal' services as meant by the statute. Prosecutor was not interested in whom the Heights employed, what wages were paid or hours or conditions of employment, nor did it control or supervise its business in any way or have any right to do so."

We find that consignment agreements, identical or similar to the one before us, have been construed by numerous courts and in no case has it been held that such contracts create the relationship of employer and employee between the consignor and consignee within the meaning of the Unemployment Compensation Law, now the Employment Security Law. *Texas Company v. New Jersey Unemployment Compensation Commission, supra; Indian Refining Company v. Dallman* (D. C. Ill.), 31 Fed. Supp. 455, affirmed by C.C.A. 119 F. 2d 417; *Orange State Oil Company v. Fahs* (D. C. Fla.), 52 Fed. Supp. 509, affirmed by C.C.A. 138 F. 2d 743; *Texas Company v. Wheeless,* 185 Miss. 799, 187 So. 880; *Barnes v. Indian Refining Company,* 280 Ky. 811, 134 S.W. 2d 620; *Texas Company v. Bryant,* 178 Tenn. 1, 152 S.W. 2d 627. As to the liability of the consignor for social security taxes under consignment agreements, see *Texas Company v. Higgins,* 118 F. 2d 636; *American Oil Company v. Fly,* 135 F. 2d 491; *Standard Oil Company v. Glenn,* 52 Fed. Supp. 755; and as to liability for torts thereunder, see *Inman v. Refining Company,* 194 N.C. 566, 140 S.E. 289; *Rothrock v. Roberson,* 214 N.C. 26, 197 S.E. 568; *Hudson v. Oil Company,* 215 N.C. 422, 2 S.E. 2d 26; *Jones v. Standerfer,* 296 Ill. App. 145, 15 N.E. 2d 924; *Gulf Refining Company v. Wilkinson,* 94 Fla. 664, 114 So. 503; *Darner v. Colby,* 305 Ill. App. 163, 26 N.E. 2d 1001; *Gordy v. Pan American Petroleum Corporation,* 188 Miss. 313, 193 So. 29.

In our opinion, the facts found below do not support the conclusions of law upon which the judgment was entered. The consignee was engaged in an individual business of his own, financed and operated by him free from the control of the consignor, and conducted outside of the places of business of the consignor.

The facts in the cases of *Unemployment Compensation Commission v. Harvey & Son,* 227 N.C. 291, 42 S.E. 2d 86, and *Employment Security*

*Commission v. Kermon*, 232 N.C. 342, 60 S.E. 2d 580, relied upon by the plaintiff, are distinguishable from those in the instant case.

The judgment of the court below is

Reversed.