GULF REFINING COMPANY, A CORPORATION, AND P. W. WEYBRECHT, *Plaintiffs in Error*, v. WILLIAM WILKINSON, *Defendant in Error*.

Division A.

Opinion Filed October 19, 1927.

*M. D. Carmichael* and *Ernest Metcalf,* for Appellant, Gulf Refining Company;

*Blackwell & Donnell,* for Appellant, P. W. Weybrecht;

*Bussey & Johnston,* for Appellee.

BROWN, J.—The first count of the declaration charged in substance that the defendant Gulf Refining Company, had engaged in the business of selling and dealing in products of gasoline and oil and disposing of the same in Palm Beach County, Florida, by and through the defendant P. W. Weybrecht; that the two defendants named had in their employment one K. E. Holley, who was employed as a truck driver, and that it was his duty to distribute gasoline and oil for the defendants, said gasoline and oil being carried in a tank affixed to the truck driven by the said K. E. Holley; that while so engaged Holley drove a tank truck from which he knew gasoline was leaking in great quantities, and which he knew was highly inflammable, to within a few feet from a building owned and used by the plaintiff in conducting his mercantile business, and there stopped said truck, which became inflamed, caused by the great quantity of gasoline leaking from the tank, and through the negligence of said Holley in permitting said gasoline to so leak therefrom, it being his duty to prevent it, and as a result of his negligence, said building owned and used by the plaintiff and his entire stock of merchandise therein also became inflamed from said burning truck and was completely consumed and destroyed by fire.

The second count was substantially the same as the first.

The defendants filed their separate pleas. The Gulf Refining Company filed a plea of the general issue and a

plea denying that either the driver of the truck or defendant Weybrecht was employed as its agent; also a plea alleging that neither Weybrecht nor Holley were its agents or employees; that they sold their products to Weybrecht as a commission merchant on a commission, and setting up the contract between said company and Weybrecht. By this contract the Refining Company agreed to ship to Weybrecht gasoline and oil in carload lots, to be received by him and sold at prices named by the Refining Company, all sales to be for cash, and if on credit only to such parties as were acceptable to the Refining Company and upon terms authorized by it. Weybrecht was to be responsible for all goods shipped to him and to account for all sales, sending a weekly statement showing all sales made and remitting weekly to the Refining Company at its Atlanta office, and also rendering a statement on the first day of each month showing in detail the goods on hand. Weybrecht agreed to pay all drayage and delivery charges and collect all empty drums and barrels and ship the same back to the Refining Company as ordered, all goods shipped to remain the property of the Refining Company until sold. The contract further provided that on the first of each month the Refining Company was to send a statement to Weybrecht showing the sales made by him during the preceding month and remitting certain commissions earned by him on such sales, 1½c per gallon on gasoline and kerosene and 10% of the invoice price on lubricating oils. The Refining Company reserved the privilege of making shipment from its stock of goods in the hands of Weybrecht and the latter agreed to fill such orders as might be sent to him by the company, no commission to be allowed on such shipments, but the company to pay him 25c per barrel for drayage and clerical work in making such shipments.

The defense did not show what caused the leaking gasoline to take fire. There is no question but what the gasoline was leaking badly from the tank, that this leak was caused in some way in going over the ferry, that the driver's attention had been called to this, and it is a fair inference from the evidence that the fire would not have been communicated to plaintiff's building but for the leaking gasoline. Whether the break in the pipe or tank was due to the driver's negligence, or not, is not explained by the evidence. The evidence shows that there was no explosion. Witness McLean testified that he sold this truck and four others to Mr. Weybrecht; that this truck had been in use only about six months, and that he did not know of any chance for a fire to start in this sort of a truck.

In order to say that the evidence afforded any reasonable inference of negligence, it would seem that the only negligence, as proximate cause of the damage, which could have been inferred therefrom was the manner in which the truck containing the gasoline was rapidly driven by Holley, in its badly leaking condition, and brought to a stop in close proximity to plaintiff's building, after he had driven rapidly from the ferry, a distance of a mile, and thus probably heating the exhaust pipe. But the negligence alleged in the declaration was that Holley permitted the gasoline to leak, it being his duty to prevent it.

Defendant in error contends that the rapid driving of the truck for a mile in its leaking condition might have caused a heated condition of the muffler or exhaust pipe and that this might have caused the ignition of the gasoline. It is quite possible that this inference could have been drawn by the jury from the testimony. But this would still leave the negligence of the driver, in his man-

ner of handling or driving the truck, as the proximate cause of the damage.

But the question arises, was the Gulf Refining Company liable for this negligent conduct on the part of the truck driver. The evidence shows that the truck was the property of Mr. Weybrecht; that the driver, Holley, was employed and paid by Mr. Weybrecht, and that the Gulf Refining Company had nothing to do with the purchase of the truck or the employment of Holley, or the payment of his salary, nor exercised, nor had any right to exercise, control over either. The contract between the Refining Company and Weybrecht was silent as to the method by which the gasoline and oils should be delivered. That matter was left to Weybrecht. It merely provided that Weybrecht should pay all drayage and delivery charges. The Refining Company contends that while it was the owner of the property which it shipped to Weybrecht to sell, that it was consigned to him on a commission basis, and that it was up to Weybrecht to furnish all trucks and other methods of delivering the same and he was to find his own customers. Weybrecht testified that Wilkinson, the plaintiff, was his own customer, that he delivered gasoline to him, and that his driver, Holley, was in the act of delivering gasoline to plaintiff the day the fire took place.

It is very generally held that the right of control as to the mode of doing the work contracted for is the principal consideration in determining whether one employed is an independent contractor or servant. It is also said that the test is whether the employee represents his employer as to the result of the work only or as to the means as well as the result. If the employee is merely subject to the control or direction of the owner as to the result to be obtained, he is an independent contractor; if he is subject to the

control of the employer as to the means to be employed he is not an independent contractor. 39 C. J. 1316, *et seq.*

"One who contracts with another to do a specific piece of work for him and who furnishes and has the absolute control of his assistants, and who executes the work entirely in accord with his own ideas, or with a plan previously given him by the person for whom the work is done, without being subject to the latter's orders in respect to the details of the work, with absolute control thereof, is not a servant of his employer, but is an independent contractor." 18 R. C. L. 492. The general rule asserts "that negligence in the conduct of another will not be imputed to a party if he neither authorized such conduct, nor participated therein, nor had the right nor power to to control it." 20 R. C. L. 149. These general principles have been recognized in the decisions of this Court. St. Johns, etc., Ry. Co. v. Shalley, 33 Fla. 397, 14 So. 890. Mumby v. Bowden, 25 Fla. 454, 6 So. 453.

In the case of Aldrich v. Tyler Gro. Co., 206 Ala. 138, 89 So. 289, it was held that a city salesman selling goods on commission for the defendant grocery company, and who had complete choice of the routes he would take within the territory assigned him, and who furnished his own automobile for visiting his customers, was an independent contractor and not a servant, and that the employer was not liable for injuries inflicted by the salesman's negligence in the operation of his automobile.

Plaintiff in error, Gulf Refining Company, contends that a contract similar to the one here in question was construed by the Supreme Court of Georgia in the case of Gulf Refining Company v. Harris, 117 S. E. 274, and also in the case of Phipps v. Gulf Refining Company, 25 Ga. App. 384, 103 S. E. 472. It is probable that the contracts were similar, though we cannot say from these cases

as they appear in the reports that the contract was the same. In the Harris case, the statement of facts merely says that this, like the Phipps case above referred to, was an action for damages on account of an injury occasioned by the alleged negligent handling of a truck, driven by the servant of one who, under a written contract with the Gulf Refining Company, had engaged to sell the products of the latter; that the contract between the Refining Company and the local dispenser of its products was the same in both cases; that in neither of these cases does it appear that the Refining Company retained any control of the manner, means or method to be employed by the local dealer in the sale of the commodities. That in each case there was evidence going to show that the business of the local dealer was so conducted with the knowledge of the defendant, as might have reasonably misled the plaintiff to infer that it was being carried on by and for the defendant corporation; but in neither case was there any sort of testimony tending to indicate that the injury complained of was in any way brought about on account of the plaintiff having been so misled. It was held in that case that:

"The general rule is that a master is liable for the torts of his servant, done within the performance of the duties of his employment. The theory of liability under the doctrine of 'respondent superior' is founded upon the legal principle expressed by the maxim '*qui facit per alium facit per se*,' which presupposes, however, that the master retains authority and control over the manner, means, and method by which the work is to be performed. But no such liability exists (for the reason that the relationship of master and servant does not exist) where the employer merely engages another to do a particular work, but retains no right or power to direct or control the manner,

means, or method by which the result is to be accomplished, except as provided by Section 4415 of the Code (1910), or unless the person sought to be charged is estopped from denying the existence of such relationship, by reason of his conduct in misleading the complainant to deal with the tortfeasor in such capacity and to his injury. In order for the principle of estoppel to thus apply, the party seeking damages must not only have been misled, but by reason of being so misled must have acted to his injury.''

In addition to the above authorities, see Obrecht v. Cedar Rapids Oil Co. (Iowa), 170 N. W. 785; Saplin v. Union Oil Co., 31 Cal. App. 597, 161 Pac. 29; Stone v. Boston R. R. Co. (Mass.), 51 N. E. 1; Casement v. Brown, 148 U. S. 615.

Whether gasoline be, or be not, an explosive under certain conditions, we do not think that under the pleadings and evidence in this case some of the rules governing the sale or handling of explosives would be applicable. 11 R. C. L. 653; 25 C. J. 181; 28 C. J. 606. However, in this connection, we might call attention to the following quotation from 25 C. J. 197: ''By the weight of authority it seems that a principal is not liable for the negligence of an independent contractor, although the work to be done is intrinsically dangerous, so long as no negligence can be imputed to him in employing such contractor, and the work itself is lawful, and will not necessarily result in injury to another. There is, however, considerable authority to the contrary,'' etc. To like effect, see also 11 R. C. L. 700.

A joint tort is essential to a joint action for damages therefor against several parties, and where the evidence fails to show a joint liability, a joint judgment is erroneous and will be reversed. Standard Phosphate Co. v.

Lunn, 66 Fla. 220, 63 So. 429; L. & N. R. R. Co. v. Allen, 67 Fla. 247, 65 So. 8.

As the evidence fails to show that the driver of the truck was the servant, employee or agent of the defendant Gulf Refining Company, in the light of the authorities above quoted, the joint verdict. and judgment in this case were erroneous, and the motion for a new trial should have been granted.

Reversed. ·

WHITFIELD, P. J., AND TERRELL, STRUM AND BUFORD, J. J., concur.

ELLIS, C. J., dissents.