MRS. MANA HUDSON v. GULF OIL COMPANY AND W. M. BRADDY.

(Filed 12 April, 1939.)

1. **Master and Servant § 22—Lease held to constitute lessee an independent contractor in the operation of filling station in question.**

   The lease in question provided that the lessee should operate the premises as a filling station and sell the products of lessor exclusively, paying as rent a stipulated sum per gallon of gasoline sold; that lessee should keep the premises in a clean and safe condition; comply with all rules and regulations by public authorities; pay all gas and electric charges, water rent, license fees, taxes and other charges, and expressly stipulated that lessor reserved no control over the operation of the business, and that neither the lessee nor any person employed by him should be an agent or employee of lessor. *Held:* The terms of the lease constitute the lessee an independent contractor in the operation of the business, and lessor may not be held liable under the doctrine of *respondeat superior* by a third person injured as a result of alleged negligence in its operation.

2. **Same—Evidence held not to show that contract constituting lessee an independent contractor had been modified or abandoned.**

   The lease contract in question constituted the lessee an independent contractor in the operation of the filling station on the premises. The lease provided that lessee should keep the premises in a clean and safe condition and that only the products of lessor should be sold thereon. Plaintiff's evidence that lessor made suggestions about obtaining new business which lessee was not compelled to follow, that lessee honored courtesy cards issued by lessor, that lessor made suggestions in regard to the neatness of the premises, under the provision of the lease that lessee should keep the premises clean, and that advertising signs of lessor were maintained thereon, *is held* insufficient to show modification or abandonment of the original contract which constituted lessee an independent contractor, nor does it tend to show that lessee and his employees were in fact employees of the lessor.

3. **Landlord and Tenant § 11—Evidence held insufficient to show violation of city ordinances in construction of filling station in question.**

   Plaintiff was injured when she fell on the sidewalk in front of defendant's filling station. Plaintiff alleged that defendant lessee in washing the cement floors of the station forced the water across the pavement

provided by the city for pedestrians. that plaintiff fell on a thin coating of ice on the sidewalk formed by the freezing of the waste water. Plaintiff introduced in evidence ordinances of the city prohibiting the drainage of water from any motor machinery or refrigerator on the sidewalk, open ditches or the street, and requiring drains from buildings to empty into ditches between the street and sidewalk. *Held:* The water alleged to have caused the injury in suit did not come from a drain or from any motor machinery or refrigerator, and there was no evidence that failure to provide any drain required by ordinances in anywise caused the condition of the sidewalk complained of.

**4. Master and Servant § 23—**

A defendant may not be held liable under the doctrine of *respondeat superior* when the jury finds that the alleged employee was not guilty of negligence proximately causing the injury in suit.

**5. Appeal and Error § 41—**

Where it is determined on appeal that appellant's motion to nonsuit on the issue of negligence should have been allowed the question of contributory negligence of plaintiff need not be considered.

APPEAL by defendant, Gulf Oil Company, from *Williams, J.,* at January Term, 1939, of CRAVEN.

Civil action to recover damages for personal injury alleged to have been caused by the negligence of the defendants.

. The corporate defendant, being the owner of a parcel of land in New Bern, N. C., bordering on Eden, Pollock and George Streets, on which is located a filling station, on 1 August, 1937, entered into an agreement with the defendant W. M. Braddy, by the terms of which it leased the said filling station with enumerated equipment, appliances, machinery and buildings located thereon, to the defendant W. M. Braddy for a term of one year, and thereafter from month to month until terminated under the terms of the agreement. In connection therewith Braddy agreed that he would not sell any gasoline other than Gulf products at said station. At the time of the matters and things complained of by the plaintiff Braddy was in charge of said filling station, operating same under the lease and, in addition to Gulf gasoline, carried in stock and sold soft drinks, crackers, cakes and other similar articles and merchandise. Sixteen Gulf advertising signs were erected and maintained on and about the property. Braddy paid for the gasoline as and when the same was delivered and agreed to pay as rent one cent per gallon for each gallon of gasoline received, with a minimum rent stipulation of $35.00 per month. Among other things, the lessee agreed "to pay all gas and electric charges, water rents, all license fees, taxes, and other charges accruing in connection with the use and operation of said premises and equipment; keep said premises, buildings, equipment and appliances, as well as adjoining sidewalks, approaches and driveways, in good condi-

tion and repair; keep said premises and sidewalks clean, safe and in a healthful condition, and comply with any and all laws or ordinances or rules or regulations of constituted public authority applicable thereto."

It was further expressly agreed that the lessor reserved no right to exercise control over the business and operation of the lessee, or to direct in any manner the conduct of his business; that the entire control and direction of said activities remained in the lessee; and that neither the lessee, nor any person employed by him, should be deemed an employee or agent of the lessor.

The ground surface of the lot from the building to the three streets bordering the lot was paved with concrete, said paving sloping toward and to the edge of the sidewalk on all three sides. The space between the outer edge of the sidewalk and the street was likewise paved so as to slope to the street and make an easy passway for vehicles to and from the station when entering from either of the three streets.

About 9 p.m. on 11 December, 1937, plaintiff and two other ladies were returning home from downtown, passing said station. As they were crossing the sidewalk which formed a part of the driveway on Pollock Street, the plaintiff slipped on the pavement and fell. As a result her left shoulder was broken and she received other physical injuries which necessitated her confinement in a hospital. Just prior to the time plaintiff approached the filling station property defendant Braddy and his employees had washed and scrubbed the pavement on the filling station property and the sidewalks, forcing the water used in connection therewith across the sidewalks into the street. It was cold and at the time the plaintiff approached a skim of ice had formed at places, and the wet, icy sidewalk is what she alleges was the cause of her fall. There was evidence that both the sidewalks which formed a part of the driveways to the filling station, and the other sidewalks adjacent, built and maintained by the city, slope slightly towards the street.

In answer to appropriate issues the jury found: (1) That the plaintiff was not injured by the negligence of the defendant Braddy; (2) that the plaintiff was injured by the negligence of the defendant Gulf Oil Company; and (3) that the plaintiff was not guilty of contributory negligence; and assessed the plaintiff's damages.

From judgment on the verdict the Gulf Oil Company appealed.

*H. P. Whitehurst and Ward & Ward for plaintiff, appellee.*
*L. I. Moore for defendant Gulf Oil Company, appellant.*

BARNHILL, J. A contract similar to the one introduced in evidence in this cause has been discussed by this Court recently in the case of *Rothrock v. Roberson,* 214 N. C., 26. The conclusion there was adverse

to this plaintiff's contention. *Inman v. Refining Co.,* 194 N. C., 566, 140 S. E., 289, and other decisions cited in the *Rothrock case, supra,* sustain the defendant's position that under this contract Braddy was an independent contractor and that neither he nor any of his employees were agents or employees of the corporate defendant. The negligence of Braddy and his employees may not be imputed to the defendant Oil Company under the doctrine of *respondeat superior,* unless the plaintiff has shown that the original contract was abandoned and superseded by another contract.

While the evidence tends to show that the wholesale dealer of the Oil Company and its sales representatives at times made suggestions to Braddy about methods for obtaining new business, about the neatness of the premises and about the appearance of his employees, and that Braddy honored courtesy cards issued by the Oil Company, we do not deem this sufficient to establish the abandonment of the original contract or to show the existence of another and a different contract. Braddy testified that the Oil Company never undertook to compel him to comply with any of its suggestions and that he followed suggestions because he considered them to be good. Furthermore, the defendant Braddy was under contract to keep the premises, sidewalks and approaches clean and in good condition. The corporate defendant was within its contract rights in suggesting and insisting that Braddy comply with the agreement in this respect. While he at one time testified that he was manager of the filling station, he explained that he meant by the term manager that he was manager under the lease; that he was a dealer. The existence of the Gulf signs on the premises which were being used for the sale of Gulf products is not inconsistent with the contract, nor does it tend to show that Braddy and his employees were in fact employees of the corporate defendant in contradiction of the terms of the lease.

But the plaintiff alleges in her complaint and contends that the filling station is improperly constructed in that there is not provided a drainage aqueduct or waste line to carry off and dispose of the debris, waste, accumulated drippings, oils and lubricants in and around said station and no provision is made for carrying off and disposing of the water used for scrubbing, washing and cleaning the said concrete floors of the said station, which is used in large and excessive amounts, and which is charged with soap and grease solvent, and thus rendered highly slick and slippery; and that as the same is constructed the said waste, oils, greases and debris accumulating at said station are forced across the pavements provided by the city for pedestrians, thereby rendering the pavements dangerous and insecure and creating an additional hazard to the pedestrians.

In support of this position the plaintiff offered in evidence section 10 of chapter 3; section 29 of chapter 4; and section 12 of chapter 3 of what purported to be the 1913 codification of the ordinances of the city of New Bern.  She also offered in evidence section 10 of chapter 3 and section 27 of chapter 4, of what purported to be the 1936 codification of the ordinances of said city.  The record discloses that the ordinances were proved and identified by F. T. Patterson.  It does not appear what official connection, if any, he has with the city.  Nor does it affirmatively appear that such ordinances are printed in book form by authority of the governing body of the city.  It is questionable whether such ordinances in the present state of this record were admissible over the objection of the defendant.  C. S., 2825.  Likewise, it might well be assumed that a 1936 codification superseded a 1913 codification.  The existence of a 1936 codification would seem to show affirmatively that the ordinances contained in the 1913 codification are not now in force and effect.

Treating the ordinances as competent evidence, after a careful examination thereof, we are unable to see how either has any material bearing on the question presented.  Section 10 of chapter 3 of the 1936 codification provides that every owner of any building from which the drain empties on the sidewalk shall remedy the same by gutter or drain pipe, said gutter or drain pipe to empty into the sand pits, and if there are no sandpits, then into the ditches.  Section 27 of chapter 4 of said codification provides that no person shall conduct the water from any motor machinery or refrigerator through pipes or otherwise upon the sidewalk, into the open ditches or upon any street of the city, nor shall any person have gutter pipes or drains of any kind running from any building or roof thereof, or lot in the city, emptying into any street of said city, except into the ditch lying between the street and sidewalk.  The 1913 ordinances are of similar import.  The soapy and oily water on the sidewalk which the plaintiff alleges was the cause of her injury was placed there by Braddy and his employees in cleaning the paved surface of the filling station lot.  It did not empty on the sidewalk from a drain, nor was it conducted to the sidewalk from any motor machinery or refrigerator.  Furthermore, the evidence discloses that this station was erected in an approved manner under a permit issued by the city.  There is no evidence that a failure to provide any drain or gutter required by the city ordinances was in anywise connected with the condition of the sidewalk at the time complained of.

From whatever angle the evidence in this cause may be viewed it necessarily leads to the conclusion that the wet and slippery condition of the sidewalk on the night the plaintiff was injured was due to the fact that Braddy and his employees, in cleaning the driveways and sidewalks, forced the water used therefor across the sidewalk into the street drain.

The jury, by its verdict, has found that this was not an act of negligence, proximately causing the injury of the plaintiff. Even if it be conceded that he at the time was acting as an employee of the corporate defendant, the said defendant may not be required to respond in damages therefor. If liable at all, it is liable under the doctrine of *respondeat superior*. If the act of the agent or employee is not negligent, or does not proximately cause the injury complained of, the master is not liable. *Morrow v. R. R.,* 213 N. C., 127, 195 S. E., 383; *Whitehurst v. Elks,* 212 N. C., 97, 192 S. E., 850.

The defendant pleads the contributory negligence of the plaintiff. The evidence disclosed that the sidewalk at the time of plaintiff's injury was well lighted. Plaintiff testified: "I never paid any attention to their washing it down. I did not pay any attention to the filling station that night. I could have told whether the sidewalk was wet if I had paid any attention. I did not notice the sidewalk to see whether it was wet or not." Whether this testimony discloses contributory negligence on the part of the plaintiff as a matter of law we need not now decide in view of our conclusion that Braddy was an independent contractor, and that in any event the verdict of the jury in favor of Braddy exculpated the corporate defendant.

We have examined *Ledford v. Power Co.,* 194 N. C., 98, 138 S. E., 424, and similar cases cited and relied on by the plaintiff. We do not consider that these decisions are in point or controlling. Nor is *Stewart v. R. R.,* 202 N. C., 288, 162 S. E., 547, authoritative on the facts in this record.

We are of the opinion that the defendant's motion to dismiss as of nonsuit, renewed at the conclusion of all the testimony, should have been sustained.

Reversed.