Rollins A. MILLER, Appellant,

v.

SINCLAIR REFINING COMPANY, Appellee.

No. 17661.

United States Court of Appeals Fifth Circuit.

June 25, 1959.

Rehearing Denied July 21, 1959.

Allen Clements, ·Jr., Claude Pepper, Neal P. Rutledge, Earl Faircloth, Miami, Fla., for appellant.

Dwight Sullivan, Miami, Fla., Scott, McCarthy, Preston, Steel & Gilleland, Atlanta, Ga., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

Appellant, a resident of Tennessee, instituted this action for damages against appellee, a corporation incorporated under the laws of the state of Maine, for personal injuries suffered as a result of an accident at an automobile service station in Monroe County, Florida. The injuries were allegedly incurred when appellant, who was standing beside his automobile while it was being filled with gasoline from a service pump, was severely burned in a fire which was caused by the collision of another automobile and the gasoline pumps. The service station was operated by one Rogers under a dealer's permit from appellee. Appellant presents several theories by which it claims appellee may be held responsible for the allegedly negligent construction or maintenance of the station which allegedly caused the accident. The case is before us on an appeal from the district court's directed verdict and judgment for the defendant. It is noted that the trial court directed the verdict after all the evidence was in rather than withholding his ruling until after a jury verdict, a practice followed by many courts.

Appellant alleged that a portion of the driveway into the service station was covered by loose gravel and that when a certain Mrs. Hess turned into the driveway from the highway for the purpose of purchasing gasoline she skidded on this gravel and was unable to avoid hitting the gasoline pumps. Appellant contends that it was negligence on the part of Sinclair to permit this condition to exist. Appellee contends that there was insufficient evidence of such negligence or of a causal connection between such negligence and appellant's injuries. It also argues that even if there was such negligence appellant has wholly failed to prove that appellant was legally responsible for it. Since we agree with the appellee's latter contention we

do not pass upon the correctness of the others. However, we do think it appropriate to say that the theory of negligence and causation was tenuous in the extreme.

■ The first of appellant's theories on which he seeks to make appellee liable for the negligent maintenance or construction of the approaches to the station is that appellee had such possession and control of the premises as to make it responsible for its physical condition.

The filling station was constructed by Rogers and was leased by him to appellee on August 6, 1951. The lease was to commence on December 8, 1951, and was for ten years with certain renewal options. On September 21, 1951, appellee granted Rogers, the owner of the fee, a dealer's permit, which was also to commence on December 8, 1951. This permit was for a minimum period of one year and was automatically renewable unless terminated by notice at least thirty days prior to the anniversary date. The lease from Rogers to appellee stated that Rogers would place appellee in possession of the premises on December 8, 1951, and the dealer's permit recited that appellee was in possession of them. Appellant strongly relies on these provisions as evidence that appellee was in possession of the premises when Rogers began to operate the station, and he cites other provisions of the dealer's permit as evidence that it retained control of the premises thereafter.

Since the lease to appellee and the dealer's permit became effective on the same date, appellee's possession was only momentary or fictitious possession unless other provisions in these agreements or the conduct of the parties made it otherwise. In this regard appellant first points to the following facts: Appellee put up the money to build the station and held a first mortgage on it; it owned the underground storage tanks, the gas pumps and a sign advertising Sinclair products; and Rogers was empowered to honor Sinclair credit cards. It is obvious that none of these facts

bears on the question of possession or control of the filling station.

Appellant next argues that appellee manifested its control of the place by its contractual reservation of the right of entry and inspection and of the right to make any necessary repairs to maintain the premises in good condition and to charge Rogers therefor in the event he failed to fulfill his agreement to maintain them, and also by the testimony of appellee's district manager and local branch manager that the latter inspected the station periodically to see if the station was in good, clean condition and made suggestions to Rogers concerning maintenance and operation of the station. However, the terms of the lease to appellee makes it clear that the duty to maintain the premises was Rogers', as owner, not Sinclair's. The lease provided that:

> "Lessor agrees, of its own expense, to maintain in good condition and repair and suitable for the business purposes of Lessee all the premises, improvements and personal property hereby leased, including driveways and approaches."

Moreover, the uncontradicted testimony of appellee's managers was that their suggestions to Rogers were nothing more than that and Rogers not only did not have to obey them, but on specific occasions had not done so. Therefore, the foregoing evidence was insufficient as a matter of law to show that Sinclair had possession of this service station.

As the foregoing demonstrates, there was insufficient evidence to justify submitting the question of possession or control of the station to the jury. Therefore appellee was, as a matter of law, not in possession of the premises and was, at the most, in the position of a lessee which has surrendered possession of the premises to its sublessee.[1] In such a case, Florida law says that the lessor is not liable for injuries to the lessee or those upon the premises in the lessee's right unless the negligent condition which causes the injury is a violation of law, is a pre-existing defect in construction or is inherently dangerous, or unless the lessor undertakes to keep the premises in repair. Mogus v. Marion Inv. Corp., 151 Fla. 744, 10 So.2d 439; Kimmons v. Crawford, 92 Fla. 652, 109 So. 585; Simms v. Kennedy, 74 Fla. 411, 76 So. 739, L.R.A.1918C, 297; Smith v. Vincent, 5 Cir., 204 F.2d 945.

Appellant apparently contends that the presence of the gravel on the driveway was a defect in construction. However, as we have seen, the filling station was not constructed by appellee, but by Rogers, and the construction of the driveway was not completed until after the commencement of the lease and the dealer's franchise. In addition, the loose gravel which constituted the alleged hazard did not accumulate until after that.[2] Therefore under no theory could this exception to the lessor's liability be applied here. See Simms v. Kennedy, supra.

Appellant also invokes the exception covering cases where the lessor undertakes to keep the premises in repair. As we have demonstrated earlier, this exception is inapplicable to this case. See Simms v. Kennedy, supra.

Appellant's final contention is that Rogers operated the station as appellee's agent or employee and his negligence may therefore be attributed to appellee. Neither we nor the parties have found any Florida cases answering the

---

1. In fact, however, as we stated earlier, appellee never actually took possession under the lease.

2. The driveway was made of rock, sealed with oil and covered with gravel which was ground into the oil. In accordance with local construction methods, the loose gravel which was not ground into the oil was left on the surface. As automobiles drove over the surface they ground some of this rock into the solid surface and knocked some of the remainder to the side of their path. The latter particles accumulated along the lesser-used portions of the driveway. The automobile which struck the pumps allegedly skidded when the driver attempted to brake in such an area.

question whether a filling station operator is an employee or an independent contractor of the oil company. Cf. Gulf Refining Co. v. Wilkinson, 94 Fla. 664, 114 So. 503. The answer would appear to depend on the facts of each case, and the main fact to be considered would be the right of control as to the mode of doing the work contracted for. Gulf Refining Co. v. Wilkinson, supra. In this case it is clear that the oil company did not control the dealer's methods of operation. It did not control the hiring or firing of employees; did not set the retail prices for gas sold at the station; did not set the hours for opening and closing the station; required no reports on operations from Rogers; and could not force Rogers to comply with any of its suggestions except to the extent that it had the power to cancel the contract at the end of any year. Rogers' independent status is further emphasized by the fact that he purchased his gas from Sinclair for cash, handled automobile tires and other merchandise other than Sinclair's, was free to and did engage in other lines of business, supplied his own building and equipment except for the tanks and pumps, and stood to retain all of the profits and suffer all of the losses from the operation of the station. See Florida Industrial Commission v. State ex rel. Orange State Oil Co., 155 Fla. 772, 21 So.2d 599. We conclude that Rogers was not appellee's employee.

■ Appellant argues that even if Rogers was not operating his station as appellee's employee or agent, "lay patrons, like the plaintiff, Miller," are "misled" by Sinclair's signs and other advertising into believing that service stations bearing the Sinclair name are maintained by Sinclair. As for this theory of "apparent agency," it is sufficient for us to say that there is absolutely no evidence as to the reason why appellant patronized this filling station. Thus there is no evidence of reliance by plaintiff on any "apparent agency." We think this distinguishes this case from Stuyvesant Corp. v. Stahl, Fla., 62 So.2d 18, and Van Engers v. Hickory House, Fla.

App., 104 So.2d 843. Moreover in both of those cases there was ample evidence to show that there was *actual* agency, though implied. See Restatement, Law of Agency, 1933 ed. §§ 266, 267.

It is manifest that even if the evidence is viewed in the light most favorable to appellant's case, there is insufficient evidence to warrant the submission of the question of appellee's liability for the alleged negligence to the jury. The district court therefore did not err in directing a verdict in appellee's favor.

The judgment is affirmed.