124 So.2d 517 (1960)
E. Harley CAWTHON, Appellant,
v.
PHILLIPS PETROLEUM COMPANY, Appellee.
No. 1878.
District Court of Appeal of Florida. Second District.
November 23, 1960.
*518 Corcoran & Henson, Tampa, for appellant.
Mabry, Reaves, Carlton, Fields & Ward, Tampa, for appellee.
KANNER, Judge.
Final summary judgment entered by the court below for the defendant, Phillips Petroleum Company, is questioned by this appeal. The action of the plaintiff, E. Harley Cawthon, was directed against both the oil company and A.W. Frazier, operator of a Phillips 66 service station.
In his complaint Cawthon alleged that A.W. Frazier and the Phillips Petroleum Company, their agents, and servants operated a service station for supplying gasoline, repairs, and other services to automobiles, that they displayed signs bearing the name, "Phillips 66," trademark of the oil company, advertising and representing themselves to the public as furnishing experienced and competent servants for automobile repairs. Cawthon also complained that he, relying on such advertising and representations, engaged the services of the defendants for repair of the brakes of his automobile; that such repairs were made by the defendants, who represented the brakes as being in good condition. Cawthon alleged that, as a result of failure of the defendants properly to repair the brakes, an accident occurred while he was operating his automobile, causing certain injuries and damages.
Motion for summary judgment was interposed by the oil company, and attached was an affidavit of the company's Tampa division manager. In substance, the affidavit stated that the oil company never had owned any interest in the filling station or the land on which it is located, that the company had no control with respect to the operation of the station and never had any participation by agency or otherwise in the automobile repair work or other work that had been and was being performed on the premises; that the only relationship of the oil company with the station was that gasoline and similar allied products manufactured by the oil company were sold there by Frazier, who secured the products by outright purchase and sold them in his own title and right as an independent operator and merchant; and that the "Phillips 66" signs were displayed at the station only for the purpose of indicating that products of the Phillips company were available.
In an opposing affidavit, with a newspaper advertisement[1] attached, Cawthon *519 stated, in essence, that the oil company had advertised extensively and in newspapers, representing itself and its dealers to the public as furnishing competent servants for automobile repairs and as being engaged in such business. In one particular it was shown by the advertisement attached to the affidavit that owners of motor vehicles were invited to "Come to your Phillips 66 Dealer for all the things you need to help your car perform at its best!" It was also stated in the affidavit that displayed along with the "Phillips 66" signs at the station were signs advertising "Brake Service" and "Mechanic on Duty." Cawthon asserted that he relied upon the advertising and representations.
The court granted the motion and entered summary judgment in favor of the defendant oil company, finding that the complaint did not allege that the Phillips Petroleum Company had any control over methods of operation or hiring or firing of employees and that there had been no evidence of agency or apparent agency which would show liability on the part of the oil company. By a separate order, the court held the complaint to be good as against the defendant, Frazier, operator of the service station.
Primarily, Cawthon presents to this court for determination the problem of whether summary judgment was precluded by any genuine issue of material fact upon which could be predicated liability of the oil company on the question (1) of control or agency or (2) of estoppel and apparent agency.
First, whether a filling station operator is an employee of an oil company or an independent contractor depends on the facts of each case, the principal consideration being the right of control as to the mode of doing the work contracted for. Where the employee is merely subject to the control or direction of the employer as to the result to be procured, he is an independent contractor; if the employee is subject to the control of the employer as to the means to be used, then he is not an independent contractor. Miller v. Sinclair Refining Co., 5 Cir., 1959, 268 F.2d 114; and Gulf Refining Co. v. Wilkinson, 1927, 94 Fla. 664, 114 So. 503.
In the case of Miller v. Sinclair Refining Co., the court determined that where the oil company did not control the filling station operator's methods of operation nor the hiring or firing of employees, did not set the retail price for gasoline sold at the station nor hours of opening or closing, could not require reports on operations from the operator, and could not force him to comply with suggestions except to the extent that it had power to cancel the franchise, then the operator was an independent contractor and not an employee of the company. See also Hudson v. Gulf Oil Co., 1939, 215 N.C. 422, 2 S.E.2d 26.
Nowhere in the complaint here nor the counter affidavit was it alleged that there was any control by the oil company over the service station operator, whereas the oil company averred that the only relationship between them was that of seller and purchaser. Neither did the general advertisement nor signs create an issue of control. Without repeating the facts, we note that the effect of the defendant's affidavit was to show that no control nor right *520 of control existed and to show, contrariwise, that the operator of the filling station was an independent contractor and not an employee. Indisputably, there was no evidence of agency upon which to predicate liability.
Let us examine next the question of estoppel and apparent agency. In order for the principle of estoppel to apply, the one seeking to recover damages not only must have been misled but must have acted to his injury by reason of having been misled. Gulf Refining Co. v. Wilkinson, supra.
The advertisement which Cawthon claims misled him, insofar as it might be construed to apply to the facts of this case, is general in nature. At the top of the advertisement in large print is the caption, "Johnny-On-The-Spot With Fine Products, Fast Service." Beneath that are pictures of three service station attendants holding or demonstrating, respectively, three of the Phillips products. Then follow five paragraphs of printed matter descriptive of the three products demonstrated, each bearing a reference to "Phillips 66 Dealer"; and the final paragraph reads:
"Come to your Phillips 66 Dealer for all the things you need to help your car perform at its best!"
Also shown on the advertisement is a copy of the orange and black Phillips 66 shield. The word "agent" or "agency" does not appear in the advertisement.
In Hudson v. Gulf Oil Co., supra, one phase of the opinion dealt with the effect of advertising signs. Under an agreement for lease of equipped premises by the oil company to a station operator, it was provided in effect that the operator would sell the oil company's products as an independent contractor and would not be subject to the control or direction of the company. There were sixteen Gulf advertising signs maintained at and about the station. The court stated that use of the Gulf Oil signs on the premises for the sale of Gulf products was not inconsistent with the contract and did not tend to show that the operator of the station and his employees were in fact employees of the oil company in contradiction of the terms of the lease.
Considering the significance of the word "dealer" in certain newspaper advertisements, the appellate court, in the case of Kaden v. Moon Motor Car Co., Mo. App. 1930, 26 S.W.2d 812, determined that the advertisements did not tend to establish agency. The action was for damages alleged to have been sustained in connection with the purchase of a certain automobile manufactured by the defendant. The plaintiff purchased a Moon automobile from one E.J. Flesher, doing business under the name of Flesher Motor Sales Company. His call upon Flesher was prompted by an advertisement of the defendant which he had seen in a newspaper, in the lower part of which advertisement appeared this statement, "Sales and service by the following direct factory dealers," after which was listed the name of the Flesher company along with six others. This advertisement, with others of a similar nature, was excluded as evidence; and this ruling of exclusion was one of the points raised on the appeal. The appellate court had this to say about the exclusion of the advertisements as they might hold any proof that the Flesher Motor Sales Company was an agent for the defendant:
"We cannot understand how the advertisements, affirmatively showing the Flesher Motor Sales Company as a direct factory dealer, could fairly be construed as holding any proof that such company was an agent for defendant. Plaintiff concedes that a dealer is one who buys and sells; and thus the very use of the term in the advertisements upon which plaintiff claims to have relied should have charged him with knowledge, nothing appearing to the contrary, that he was about to do business with a dealer, as the term is ordinarily and usually understood, and not with a duly accredited agent of the manufacturer. Nor is the situation in any wise altered because Flesher happened *521 to deal with the Moon Motor Car Company of Ohio, designated in the advertisements as a factory branch of defendant, for if he dealt with a factory branch, he was nevertheless a direct factory dealer, just as the several advertisements held him out to be. We conclude, therefore, that there was nothing about the advertisements in question, when reasonably construed, which could have had the effect of aiding plaintiff's case, in consequence of which there was no error in their exclusion."
Also see Paige-Detroit Motor Car Co. v. Pintado, 1921, 82 Fla. 210, 89 So. 549.
We see upon examination that the advertisement relied upon by the plaintiff in the present action was one advertising Phillips 66 products as being handled by the dealers of that petroleum company. There appeared in the advertisement no statement that mechanical or repair services were solicited or offered by the oil company or its employees or agents; neither did the advertisement indicate agency. The assertion in Cawthon's affidavit relative to the signs, "Brake Service" and "Mechanic on Duty", never intimated that those signs soliciting automotive work were placed by Phillips Petroleum Company. No factual connection between the presence of the signs and the conduct of the oil company has been shown. The plaintiff stresses the language, "Come to your Phillips 66 Dealer for all the things you need to help your car perform at its best!" The advertisement must be considered in its entirety. The picture in it was of three attendants, each holding in his hands an accessory product referred to in the advertisement's statement, namely, a can of anti-freeze, a battery, and a tire. This illustration depicted the advertising as being directed to the products which the oil company manufactures and sells outright to the operators of service stations. It is to be observed that the advertisment was not restricted to the particular station here concerned but applied generally to those stations which handled the Phillips products. Thus it is clear from reading the complete advertisement that it was referring to Phillips products, "things" for sale, and not to general mechanical repair service. The advertisement was insufficient to estop Phillips Petroleum Company from denying that the dealer here was its agent, and it did not constitute an assertion of agency upon which plaintiff was entitled to rely.
It is clear that the evidence offered by the plaintiff on the question of estoppel and apparent agency is not sufficient to have created a genuine issue of material fact. The lower court therefore acted properly in entering summary judgment.
Affirmed.
ALLEN, C.J., and SHANNON, J., concur.
NOTES
[1] "Johnny-On-The-Spot With
 Fine Products, Fast Service!
 "(Picture)

"By his prompt and cheerful service, you know your Phillips 66 Dealer really means it when he says, `It's a pleasure to please you.'
"For example, you'll be pleased with the way your Phillips 66 Dealer looks after your tires. He'll check the air pressure, and inspect for
signs of weakness. When (Phillips)
you need new tires he'll 66 Shield)
quickly supply a new set of dependable Phillips 66 Action-Tread Tires, backed by a written guarantee.
"Need a new battery? Let your Phillips 66 Dealer provide a rugged new Phillips 66 Trop-Artic[*] Battery, also backed by a written guarantee.
"And you'll surely be pleased with Phillips 66 Guaranteed Anti-Freeze Service. Just tell your Phillips 66 Dealer the temperature protection you want (even down to 50 below) and he'll put in the right amount of Phillips 66 Anti-Freeze  permanent type. Then if at any time this winter you need more anti-freeze to maintain this level of protection he'll put it in at no additional cost to you.
"Come to your Phillips 66 Dealer for all the things you need to help your car perform at its best!
 "[*] A trademark
 "Stop At Phillips 66 Stations for
 "Hospitality on the Highway
 ------------------------------------------
 "Lee & Pomeroy Oil Co., Distributor 
 1237 Twiggs St., Tampa, Fla."