George G. COE, Plaintiff in Error,

v.

Fred ESAU and Continental Company, Defendants in Error.

No. 39854.

Supreme Court of Oklahoma.

Jan. 8, 1963.

Frank R. Hickman, Tulsa, for plaintiff in error.

Covington & Gibbon and James E. Poe, Tulsa, for defendants in error.

BERRY, Justice.

This action was brought below by George G. Coe, a dental practitioner, against Fred Esau, a filling station operator, and Continental Oil Company, owner of the station premises, to recover for damage to his automobile from lack of adequate lubrication occasioned by the escape of oil through a faulty oil filter gasket installed by the station operator. Each of the defendants interposed a demurrer to the evidence adduced by the plaintiff. The trial court sustained the demurrer and rendered judgment for both defendants. Plaintiff has perfected this appeal after his motion for a new trial was denied. Our reference to the parties will be by their surnames or designation below; the corporate defendant, Continental Oil Company, will be called "Continental".

The appeal presents two principal questions: (a) Are the facts and circumstances adduced in evidence sufficient to raise an inference that Esau, the station operator, was a mere agent or employee of Continental? (b) Is the evidence of the plaintiff, together with all reasonable inferences deducible therefrom, sufficient to make a prima facie case of actionable negligence? We will discuss these questions in the sequence in which they stand posed.

In support of his argument that Esau was an agent of Continental in the operation of the filling station where the faulty service work was performed upon plaintiff's automobile, plaintiff calls our attention to these facts: (a) Continental owned the premises upon which the filling station in question was situated; (b) Continental's name or trade mark was prominently displayed upon the station premises; (c) The name "Conoco", Continental's trade mark for its gasoline and oil products, would appear on ad-

vertising matter and handbills distributed by Esau; (d) In the classified pages of the Tulsa telephone directory Esau's station was listed under the heading "Conoco Service Stations" and Continental's triangular trade mark; (e) Esau extended the privilege of charging for gasoline, oil and service sold to all holders of Continental credit cards who were billed directly by Continental; (f) Esau received advice and suggestions from Continental concerning the standard of cleanliness at his station, although he did not have to "abide" by them; (g) In consideration for the use of the station premises and equipment Esau paid one and one-fourth cents on each gallon of gasoline sold; (h) Although Esau controlled his business hours, he was required to occupy the premises and operate the station "or he would lose such right".

As disclosed by the testimony of Esau, his relationship with Continental was governed by a written lease agreement. The exact terms of this agreement are not disclosed by the record. When defendants sought to introduce the lease on cross-examination of Esau (who was called as a witness for the plaintiff) plaintiff interposed an objection to its reception in evidence which the trial court sustained. However, the existence of the written lease agreement is not disputed by plaintiff.

■ It may be stated as a general rule that tenancy alone will not render the landlord liable for the torts of his tenant. Neither the mere fact of ownership of property nor that goods marketed under the trade mark or trade name of the landlord are advertised and sold upon the demised premises is deemed sufficient to raise an inference that the tenant-vendor is the agent or employee of the landlord. Cities Service Oil Co. v. Kindt, 200 Okl. 64, 190 P.2d 1007, 1011; Greiving v. La Plante, 156 Kan. 196, 131 P.2d 898; 2 C.J.S. Agency § 2, p. 1030. It is indeed a matter of common knowledge and practice that distinctive colors and trade mark signs are displayed at gasoline stations by independent dealers of petroleum product suppliers. These signs and

emblems represent no more than notice to the motorist that a given company's products are being marketed at the station. See Cawthon v. Phillips Petroleum Co. (Fla. App.), 124 So.2d 517, 83 A.L.R.2d 1276; Sherman v. Texas Co., 340 Mass. 606, 165 N.E.2d 916; Lindsay v. Francis (Mo.App.), 107 S.W.2d 97; Greiving v. La Plante, supra, and annotations beginning at p. 1292, 83 A.L.R.2d.

■ Neither can we view the dealer's practice of honoring the producer's credit cards as indicative of a master and servant relationship. The use of such cards constitutes a distinct business advantage to the station operator who is accorded full credit for all purchases made by the card holders. Cities Service Oil Co. v. Kindt, supra; see also Arkansas Fuel Oil Co. et al. v. Scaletta et al., 200 Ark. 645, 140 S.W.2d 684, 689.

■ The law itself makes no presumption of agency, and the burden of proving agency, including not only the fact of its existence but also its nature and extent, rests ordinarily upon the party who alleges it. Barall v. McDonald, 172 Okl. 276, 44 P.2d 997. Whether relation of master and servant does in fact exist between lessor of gasoline station and its lessee so as to render the doctrine of respondeat superior applicable, depends on whether lessor has the right to control, or exercises the right to control, lessee in the details of the work to be performed in the operation and management of the station. Cities Service Oil Co. v. Kindt, supra; Texas Co. v. Wheat, 140 Tex. 468, 168 S.W.2d 632.

The facts and circumstances adduced by plaintiff's evidence are insufficient to raise the necessary inference that Continental either had the right to control or exercised the right to control the conduct of Esau in the operation of his station. Esau was free to, and did handle, tires and automotive accessories of other suppliers; he procured his own personnel, determined the daily business hours and the methods of doing business. The petroleum products supplied by Continental were sold to Esau on a cash basis. So far as the record discloses, Esau

was not in any way restricted in adopting his own merchandising policies.

■ Where the undisputed evidence concerning the status of the parties defendant to each other is reasonably susceptible of but a single inference, the question of their legal relationship, be it master and servant or contractor and contractee, is one purely of law. Fairmont Creamery Co. of Lawton v. Carsten et al., 175 Okl. 592, 55 P.2d 757, 758; Hawk Ice Cream Co. v. Rush, 198 Okl. 544, 180 P.2d 154, 156; Cook v. Knox, Okl., 273 P.2d 865, 869; and Burke v. Thomas, Okl., 313 P.2d 1082, 1087.

■ We therefore hold that the trial court committed no error in sustaining Continental's demurrer to plaintiff's evidence. Cities Service Oil Co. v. Kindt, supra. See also Barber v. Continental Oil Co., Okl., 325 P.2d 949.

■ The other theory upon which plaintiff seeks to impose liability on Continental is its claimed non-delegable duty to the public at large to make certain that the station lessee was a qualified automobile serviceman and that he was financially capable of responding in damages for his acts of negligence. A similar argument was advanced in Marion Machine, Foundry & Supply Co. v. Duncan, 187 Okl. 160, 101 P.2d 813, 816, where it is said:

> " * * * Liability of the principal contractor for the negligence of his independent contractor should be confined to those instances where the work to be performed is inherently dangerous or is unlawful. *This court has never recognized a contrary rule.* We are unable to see where serious injustices might arise from a rule to the effect that the liability or nonliability of the principal should rest wholly upon whether the workman was respectively his servant or his independent contractor, except, of course, in those cases where the work to be performed is inherently dangerous or is unlawful. And we so hold in the instant case." (emphasis ours)

The work of installing an oil filter cartridge cannot be considered as being inherently dangerous in itself; nor is a defective installation of such accessory likely to result in a condition which would render the automobile an inherently dangerous instrumentality. Certainly a replacement of an oil filter is not an unlawful activity. We know of no statutory duty in this State which requires a service station lessor to ascertain his lessee's fitness or skill in the work of repairing and servicing automobiles. An automobile is not in itself an inherently dangerous machine. Marion Machine, Foundry & Supply Co. v. Duncan, supra; Ford Motor Co. v. Livesay, 61 Okl. 231, 160 P. 901; see also Burke v. Thomas, Okl., 313 P.2d 1082, 1083, wherein we held:

> "A person performing work through an independent contractor is not liable for damages to third persons caused by the negligent performance of the work by the latter, except where the work is inherently dangerous or unlawful or in cases where the principal contractor owes a contractual or defined legal duty to the injured party in the performance of the work."

Compare: Huckins Hotel Co. v. Clampitt, 101 Okl. 190, 224 P. 945; Minnetonka Oil Co. v. Haviland, 55 Okl. 43, 155 P. 217.

Applying the cited authorities to the present cause, we are constrained to hold that Continental was not under a "defined legal duty" to ascertain Esau's skill as an automotive serviceman, nor was it charged with the duty of determining that Esau was financially capable of responding in damages for his acts of negligence.

The next question we are called upon to consider is the sufficiency of plaintiff's evidence to establish a prima facie case of negligence against Esau.

As we view plaintiff's evidence, the facts and circumstances fairly disclose that the damage to his automobile engine resulted from lack of lubrication occasioned by oil leakage through a faulty oil filter gasket installed by Esau when engaged by plaintiff to change the filter cartridge. While there

is no direct proof that when the vehicle was being driven with the faulty gasket the oil pressure indicated a total escape of lubrication, there is testimony that the oil gauge on the instrument panel turned red and the engine was smoking. An automobile mechanic testified that the damage to plaintiff's engine was due to the lack of adequate lubrication and that an improper reconnection of the oil filter would cause the oil to be "drained out". It was further shown that the operation of plaintiff's automobile, without oil or with "very little" oil, for as long as one mile would result in serious damage to the engine. According to the mechanic, it was not necessary to dismantle the engine in order to determine the full extent of its damage which he estimated at between $500.00 and $700.00. Contrary to the assertions in the brief, the evidence is clear that plaintiff's automobile was driven with a defective oil filter gasket over a distance in excess of a mile.

Under the evidence, as outlined, Esau points out, the damage to plaintiff's engine could also have been caused by a multitude of other factors. This, however, is not the question before us since we are not called upon to weigh the evidence or determine its credibility.

■ The essential elements of a cause of action based on negligence may be inferred from all the facts and circumstances, and where the circumstances are such as to remove the case from the realm of conjecture and place it within the sphere of legitimate and rational inferences from established facts, a prima facie case is made. Smittle v. Illingsworth, Okl., 373 P.2d 78, 79. Facts may be proved by circumstantial as well as by direct evidence, and the proof need not rise to that degree of certainty as will exclude all conclusions inconsistent with defendant's liability. Richardson v. Butler, 206 Okl. 79, 240 P.2d 1058. All facts which the evidence tends to prove in the slightest degree, and all inferences and conclusions which may reasonably and logically be drawn therefrom, stand admitted by a demurrer to the evidence, and the trial court cannot weigh conflicting evidence but must treat, as withdrawn from his consideration, all evidence which is favorable to the demurrant. Smittle v. Illingsworth, supra.

■ There was error in determining that plaintiff did not establish a prima facie case of actionable negligence. See Richardson v. Butler, supra. The evidence is sufficient to warrant its submission to the jury either on the theory of negligence or for breach of an implied contract. Schmidt v. Schabow, 265 Wis. 154, 60 N.W.2d 735, 38 A.L.R.2d 1449. See annotations beginning at p. 1453, 38 A.L.R.2d 1453 relative to liability of filling station operator, garageman, or the like in servicing vehicle with lubricants or fuel.

■ In the course of the trial and just before sustaining the demurrer to the evidence, the trial court expressed the view that the proper measure of damages to plaintiff's automobile was the difference in the value of the engine "immediately before and after" its damage. Since the cause will have to be retried as against defendant Esau, we call attention to our decisions in Marland Refining Co. v. Duffy, 94 Okl. 16, 220 P. 846, 851, 35 A.L.R. 52, and Carnes v. Ditzenberger, 163 Okl. 146, 21 P.2d 756, 758, wherein we said:

"When an automobile has been damaged by the negligence of another and can be repaired, the proper measure of damages is the cost of the repairs and the value of the loss of the use of it while it is being repaired. If it cannot be repaired then the measure of damages is the difference between the market value of the automobile before it was damaged and the value of the wreckage."

■ Inasmuch as the evidence shows that plaintiff did not have his automobile repaired but traded it in for another car, we point out that "In an action for damages to an automobile, it is not a condition precedent to recover for items of damage for repairs that plaintiff should have actually

expended the sums of incurred liability therefor." Missouri Pac. R. Co. v. Qualls, 120 Okl. 49, 250 P. 774.

The trial court's judgment is affirmed in so far as it affects defendant Continental Oil Company but reversed as to defendant Esau and cause is remanded with directions to grant plaintiff a new trial as to Esau.