QUIJADA CORPORATION, Appellant,

v.

GENERAL MOTORS CORPORATION, DETROIT DIESEL ENGINE DIVISION, Appellee.

No. 4487.

District of Columbia Court of Appeals.

Argued March 10, 1969.

Decided May 14, 1969.

---

Francis X. Quinn, Washington, D. C., for appellant.

Carl L. Taylor, Washington, D. C., with whom John P. Arness and Stephen S. Boynton, Washington, D. C., were on the brief, for appellee.

Before HOOD, Chief Judge, and KELLY and FICKLING, Associate Judges.

FICKLING, Associate Judge:

Appellant, Quijada Corporation, sued appellee, General Motors Corporation-Detroit Diesel Engine Division, for damages to its bus caused by repairs negligently made by certain distributors of appellee.

In 1962 appellant purchased a used General Motors bus from one not a party to this action. From November 1963 to January 1964, this bus, while being driven in several states, required extensive engine repairs which were made by various distributors of appellee located in Wisconsin, Illinois, Indiana, and Virginia.

After a trial on the sole issue of agency, the court found that no agency relationship existed between appellee and its distributors and entered a judgment for appellee.

Appellant contends: *first*, that it was error to sever the issues of agency and damages; *second*, that the court erred in not allowing appellant to introduce evidence of appellee's breach of implied warranty of merchantability or fitness of parts; and *third*, that the court erred in holding that appellant had not established that the distributors were agents of appellee. We find no error and we affirm.

■ When the trial court ordered that the issues of liability and damages be tried separately,[1] the only claim of damages before the court was predicated on the alleged

---

1. Rule 42(b) of the trial court provides in pertinent part:

   Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any * * * separate issue * * *.

breach of warranty of performance of repairs made by the distributors. Unless it could be established that the distributors were appellee's agents, appellant had no cause of action against appellee. This, appellant's counsel conceded when he stated, while opposing the severance, that "If there is agency then what they [distributors] did, how they [distributors] did it, and what they [distributors] said, all is a part of this case. *And if there isn't agency, by the same token, there isn't any responsibility here.*" (Emphasis supplied.) To support the granting of severance of issues, it is enough that there be on the record at the time a substantial issue of fact which, if determined in favor of defendant, will eliminate expense for all concerned without prejudicing the rights of the parties. Rossano v. Blue Plate Foods, Inc., 314 F.2d 174, 176 (5th Cir. 1963), *cert. denied*, 375 U.S. 866, 84 S.Ct. 139, 11 L.Ed.2d 93 (1963).

As to appellant's second claim of error, it was during the trial that appellant for the first time contended that it had alleged an additional count of breach of warranty—appellee's implied warranty of merchantability or fitness for use of the parts installed by the distributors. However, from a fair reading of the complaint, appellant failed to allege such theory[2] and failed to request leave to amend its complaint to include the additional theory of recovery.

Nor do we find any merit in appellant's contention that the trial court erred in holding that appellant had failed to show an agency relationship between General Motors and the distributors. The distributorship system has given rise to much litigation involving the issue of whether distributors are independent contractors or agents of the corporation whose products they sell. Although each case must be decided on its facts, the determining factor is the corporation's right to control the day-to-day operations of the distributor.[3]

In the instant case, the agreements between appellee and the distributors gave the distributors the non-exclusive right to sell and service Detroit Diesel products and parts in their territories. The distributors were required to: prepare monthly reports of retail sales and inventory; prepare periodic financial and operating statements; send their employees to Detroit Diesel training schools; erect and maintain advertising signs at their expense; maintain the business hours customary in the trade; maintain satisfactory business facilities; and obtain the consent of appellee before changing the location of their businesses. Appellee agreed to create a demand for its products through advertisements. Although these requirements may be some indicia of control, courts have held similar requirements to be consistent with the distributor's status as an independent contractor.[4] These

2. Paragraph 3 of its complaint (relied upon by appellant) reads in pertinent part:

The particular repair garages aforementioned were at all times referred to [as] agents and/or authorized dealers of the defendant as a result of which defendant warranted that parts utilized were fit for their use and repairs performed were in a workmanlike manner. Plaintiff in reliance upon these warrantees [sic] delivered its vehicle to the said garages. The *repairs* performed by defendant's garages in Milwaukee, Chicago and South Bend *were not performed* in accordance with warrantees [sic] alleged and required plaintiff [to] incur substantial expenses to correct the repair work. \* \* \* (Emphasis supplied.)

3. Miller v. Sinclair Refining Co., 268 F.2d 114, 118 (5th Cir. 1959) ; Hoover v. Sun Oil Co., Del., 212 A.2d 214, 216 (1965) ; Cawthon v. Phillips Petroleum Co., Fla. App., 124 So.2d 517, 519, 83 A.L.R.2d 1276 (1960) ; Gulf Refining Co. v. Wilkinson, 94 Fla. 664, 114 So. 503, 505 (1927) ; Coe v. Esau, Okl., 377 P.2d 815, 818 (1963) ; Green v. Independent Oil Co., 414 Pa. 477, 201 A.2d 207, 210 (1964).

4. As to the maintaining of signs, *see* Cawthon, *supra* n. 3; Hudson v. Gulf Oil Co., 215 N.C. 422, 2 S.E.2d 26 (1939) ; Coe, *supra* n. 3. As to maintaining a satisfactory place of business, *see* Miller, *supra* n. 3; S. B. McMaster, Inc. v. Chevrolet Motor Co., 3 F.2d 469 (E.D.S.C.1925). As to the lack of con-

requirements only affect the end result to be achieved—the sale and servicing of Detroit Diesel products and parts—and in no way control the method by which this is accomplished.

By comparison, the functions specifically left to the sole discretion of the distributors were those which directly pertained to the manner in which the distributors performed the work contemplated by the distributorship arrangement. The agreement gave the distributors full responsibility for the servicing and installation of Detroit Diesel products and parts and provided that the distributors were to *purchase* the Detroit Diesel parts. Thus, appellee did not retain any legal title to the parts which were sold. Testimony at trial and depositions introduced into evidence established that: appellee had no control over the hiring, firing, or supervision of the distributors' employees; appellee's representatives visited the distributors and made suggestions but the distributors were under no obligation to adopt them; and the distributors were not obligated to make repairs in accordance with the manuals supplied by appellee. In addition, the distributorship agreement specifically stated that the distributors were not agents of appellee and did not have the authority to create any obligation in the name of appellee or to bind appellee in any manner. These factors strongly indicate that the distributors were independent contractors[5] and, on the record before us, we hold that the trial court did not err in finding no liability on the part of appellee for any alleged damages caused by the distributors.

Affirmed.

trol over specific hours of operation, *see* Miller, *supra* n. 3; Coe, *supra* n. 3. As to the preparation of reports, *see* Jones v. Standerfer, 296 Ill.App. 145, 15 N.E. 2d 924 (1938). As to the appellee's agreement to advertise, *see* Cawthon, *supra* n. 3.

5. As to the distributors' purchase of the parts from appellee, *see* Miller, *supra* n.

3; S. B. McMaster, Inc., *supra* n. 4. As to the appellee's lack of control over the distributors' employees, *see* Miller, *supra* n. 3; Cawthon, *supra* n. 3; Gulf Refining Co., *supra* n. 3; Jones, *supra* n. 4. As to appellee's lack of power to compel adoption of its suggestions, *see* Miller, *supra* n. 3; Hudson, *supra* n. 4.