FAULKNER, Justice.
This is an appeal from summary judgments entered in favor of Ford Motor Company and Ford Motor Credit Company. We affirm.
Roger W. Cavaness sued Ford Motor Company and Ford Motor Credit Company (FMCC), a wholly owned subsidiary of Ford, for fraud in the sale of a Lincoln Continental.
On October 30, 1975, Ford appointed Bill Justice Ford to be its authorized dealer in Citronelle, Alabama. As an authorized dealer, Justice used Ford’s trademark “A-1” in the marketing of used vehicles. FMCC, with the knowledge of Ford, approved Justice for the credit wholesale plan. In the dealership agreement between Ford and Justice, Justice was required to furnish Ford with monthly statements reflecting the financial condition of the dealership. The dealership was in business twenty-six months and only eleven such statements were issued. FMCC, who had provided Justice with “floor plan financing,” seized the vehicle inventory on January 20, 1978, and closed the dealership’s doors.
Meanwhile, in September, 1977, while still in business, Justice sold a Lincoln automobile to Cavaness, who used it for personal and business purposes as chairman of the Board of Bay Broadcasting Company. The Lincoln had been taken in on a trade from a Mr. Kinnaird. Kinnaird had purchased it from Blythe Ford, Inc. in Franklin, Virginia, and had executed a note to FMCC for the purchase price. For the cost of the Lincoln, Bay Broadcasting Company borrowed $9,998.00 from First Alabama Bank in Mobile. The application for a certificate to obtain a license showed First Alabama Bank to be the first lienholder.
On April 12,1978, Cavaness learned from the Mobile police that FMCC intended to repossess the Lincoln and that Kinnaird had picked it up. FMCC’s office in Norfolk and its Mobile office had been in contact with each other, trying to collect on the Kinnaird note from Justice. Cavaness was told by Kinnaird’s wife that FMCC had given instructions to pick up the Lincoln.
The dispositive issue is whether there is sufficient evidence to support an action in fraud.
*606 FRAUD AS TO FORD
The uncontradicted evidence submitted by Ford through its District Sales Manager, Ronald H. Trull, shows that Ford was never contacted by Bill Justice Ford or FMCC in the matter of the sale of the Lincoln; that Ford did not know the automobile was sold by Justice to Cavaness until after suit was instituted; that Ford would not have received any information or advice from FMCC that it financed the automobile; that Ford does not market used cars— money generated by the sale of used cars is solely for the benefit of the dealers; that Ford was never contacted by FMCC concerning the on-going financial condition of Justice or any dealings that may have occurred between Justice and FMCC concerning vehicles in Justice’s new or used inventory until January, 1978, when FMCC advised Ford that it was suspending Justice from wholesale financing. In view of this evidence, we conclude that Ford could be guilty of neither fraud nor conspiracy to commit fraud in the sale of the automobile to Cavaness.
FRAUD AS TO FMCC
Euel Johnson, Branch Manager of FMCC, testified in an affidavit that:
“At no time did Ford Motor Credit Company have any ownership or proprietary interest whatsoever in Bill Justice Ford, Inc. from the inception of Bill Justice Ford, Inc. through and inclusive of the termination of business by Bill Justice Ford, Inc. Bill Justice Ford, Inc., Bill Justice, individually, and all officers, directors, stockholders, employees, or agents of Bill Justice individually or Bill Justice Ford, Inc. were in no respect agents, servants, or employees of Ford Motor Credit Company from the inception of Bill Justice Ford, Inc. through and inclusive of its terminating doing business. Furthermore, from the inception of Bill Justice Ford, Inc. through and inclusive of its terminating doing business, Ford Motor Credit Company did not participate in sales negotiations, conclusion of sales, closing of sales, acquisition of vehicle inventory, or any other managerial or operating decision making process of Bill Justice Ford, Inc. of whatsoever kind of nature.”
This evidence was not rebutted by Cavaness.
We reach the same conclusion as to FMCC that we did as to Ford — no fraud and no conspiracy to commit fraud.
The record negates any right of control by FMCC over Justice. Cf. Robinson v. Allstate Ins. Co., 399 So.2d 288 (Ala.1981), Cawthon v. Phillips Petroleum Co., 124 So.2d 517 (Fla.Dist.Ct.App.1960). Moreover, there is no evidence in the record to show that FMCC made any representations to Cavaness. As a matter of fact, Cavaness testified that he relied only on the representations to him made by Justice when he brought the Lincoln.
Finally, Cavaness contends that FMCC knew that the Lincoln was for sale on Justice’s lot, and that it was the first lienholder; that Kinnaird had informed FMCC on September 17, 1977, that he had traded the Lincoln to Justice. These contentions are without merit. The fact remains that Justice acted independently when he sold the Lincoln to Cavaness.
The evidence in this case is insufficient to support an action of fraud on the part of Ford or FMCC.
The judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.