2004 OK 2

Doug and Shannon WATHOR, individually and as parents of Nicholas Wathor, a minor child, individually and on behalf of themselves and all others similarly situated, Plaintiffs/Appellants,

v.

MUTUAL ASSURANCE ADMINISTRA-TORS, INC., a domestic corporation, Defendant/Appellee.

No. 97,696.

Supreme Court of Oklahoma.

Jan. 20, 2004.

As Corrected Jan. 22, 2004.

Rehearing Denied March 29, 2004.

Steven S. Mansell, Mark A. Engel, Steven S. Ashmore, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Elaine R. Turner, Susanna G. Voegeli, Oklahoma City, Oklahoma, for Defendant/Appellee.

BOUDREAU, J.

¶ 1 Oklahoma County offered its employees, like plaintiff Doug Wathor, access to its self-funded health insurance program called the Oklahoma County Health and Dental Plan (Plan). Oklahoma County hired defendant Mutual Assurance Administrators, Inc. (MAA) as its third party administrator (TPA).[1] MAA's Administrative Service Contract (Contract) with Oklahoma County obligated MAA to provide the ministerial and clerical services required by the Plan in connection with its operation. Under the Contract, MAA initially determines whether any particular claim for benefits qualifies for payment under the Plan. The Oklahoma County Budget Board (Oklahoma County) handles all appeals of denied claims and has final authority to approve or deny claims. The Contract provides for MAA to be compensated by a flat fee based solely on the number of participants in the Plan on the first day of any given month. MAA assumes no risk for any claims filed under the Plan.

¶ 2 Mr. and Mrs. Wathor (Wathors), individually and as parents of Nicholas, filed a petition alleging that MAA is an insurer who breached its contract with them and acted in bad faith when it violated Oklahoma's portability statute, 36 O.S.2001 § 4509.2, which prohibits insurers from excluding pre-existing conditions from coverage if the insured had been covered under a previous plan.

¶ 3 The Wathors filed a motion for partial summary judgment on the issue of whether they could be denied coverage on the basis of a pre-existing condition. MAA filed a response and its own motion for summary judgment. In its motion, MAA asserted, among other things, that because it is a TPA, not an insurer, both of the Wathors' claims fail as a matter of law. The trial court agreed. It denied the Wathors' motion and granted MAA's motion. The Court of Civil Appeals affirmed. We granted certiorari to determine, among other issues, the first impression issue whether a third party administrator who is not an insurer may be subject to suit based on its alleged bad faith actions in administering an insurance plan.

## I. STANDARD OF REVIEW

¶ 4 Summary judgment is appropriate only where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Oliver v. Farmers Ins. Group of Cos.*, 1997 OK 71, 941 P.2d 985. As this decision involves purely legal determinations, our standard of review of a trial court's grant of summary judgment is *de novo*. *Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, 920 P.2d 122. We review all inferences and conclusions to be drawn from underlying facts contained in evidentiary materials in a light most favorable to the party opposing the motion. *Oliver, supra*. If the uncontroverted facts support legitimate inferences favoring well-pleaded theory of the party against whom the judgment is sought or if the judgment is contrary to substantive law, the judgment will be reversed. *Hargrave v. Canadian Valley Elect. Co-op.*, 1990 OK 43, 792 P.2d 50.

## II. BAD FAITH CLAIM

¶ 5 The Wathors contend the trial court erred in concluding they could not maintain a tort action against a third party administrator for breach of an insurer's duty of good faith. Every contract in Oklahoma contains an implied duty of good faith and fair dealing. *Doyle v. Kelly*, 1990 OK 119, 801 P.2d 717, 718. In ordinary commercial contracts, a breach of that duty merely results in damages for breach of contract, not independent tort liability. *Christian v. American Home Assur. Co.*, 1977 OK 141, 577 P.2d 899.

¶ 6 Insurance contracts, however, are not ordinary commercial contracts. *Id.* A "special relationship" exists between an insurer and its insured stemming from the quasi-public nature of insurance, the unequal bargaining power between the insurer and insured, and the potential for an insurer to

---

1. As a TPA, MAA is subject to the Third Party Administrator's Act, 36 O.S.2001 §§ 1441 *et seq.* Pursuant to § 1442, an administrator is any person who collects premiums for an insurer or

trust or whose adjuster settles claims for an insurer or trust, in connection with life or health insurance coverage or annuities in this State.

unscrupulously exert that power at a time when the insured is particularly vulnerable. *Id.* at 902–04. The special relationship creates a nondelegable duty of good faith and fair dealing on the part of the insurer. *Id.* An insurer's breach of this duty gives rise to a separate cause of action sounding in tort. *Id.* at 904.

¶ 7 The duty of good faith and fair dealing applies to activities after the establishment of the insurer-insured relationship, and includes the claims handling process. *Kincade v. Group Health Services of Oklahoma, Inc.,* 1997 OK 88, 945 P.2d 485, 489 n. 18. The duty is nondelegable so that insurers cannot escape it by delegating tasks to third parties. *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.,* 2000 OK 55, ¶ 9 n. 5, 11 P.3d 162, 167 n. 5.[2]

¶ 8 Normally, only the insurer owes the duty of good faith and fair dealing to its insured. Agents of the insurer—even agents whose acts may have been material to a breach of the duty—do not normally owe the insured a duty of good faith since agents are not parties to the insurance contract. *Timmons v. Royal Globe Ins. Co.,* 1982 OK 97, 653 P.2d 907, 912–13 (rejecting an attempt to hold an insurance agent liable for breach of the duty of good faith by the insurance company).[3]

¶ 9 In the typical case the insured is adequately protected by the nondelegable duty that the law imposes on the insurer. However, the imposition of a nondelegable duty on the insurer does not necessarily preclude an action by an insured against a plan administrator for breach of an insurer's duty of good faith. In *Wolf v. Prudential Ins. Co.*

*of America,* 50 F.3d 793 (10th Cir.1995), the Tenth Circuit Court of Appeals considered the issue of whether an insured under a self-funded health benefits plan could sue the plan administrator for its own bad faith refusal to pay for treatment.

¶ 10 In *Wolf,* the plan administrator had primary control over benefit determinations (including some intermediate appeals). As payment for administering the plan, the plan administrator received a percentage of the premiums paid for participant coverage. The plan administrator's percentage increased as losses decreased. In addition, if losses increased to a certain level, the plan administrator had to share the risk with the board; if losses got even higher, the plan administrator had to underwrite the entire risk.

¶ 11 In determining whether the plan administrator owed the insured a duty of good faith, the Tenth Circuit refused to decide the issue by simply concluding the plan administrator was a stranger to the insurance contract. Rather, the court emphasized that the analysis should focus on the factual question whether the plan administrator acted sufficiently like an insurer such that there was a "special relationship" between the plan administrator and the insured that would give rise to the duty of good faith. *Id.* at 797. The Tenth Circuit predicted the Oklahoma Supreme Court would impose a duty of good faith on an entity in the position of the plan administrator in *Wolf,* for the same reasons we imposed that duty on "true" insurers in *Christian. Wolf,* 50 F.3d at 798.

¶ 12 We agree with the analysis of the Tenth Circuit under the facts presented

---

**2.** "We ruled over seventeen years ago [in *Timmons v. Royal Globe Ins. Co.,* 1982 OK 97, 653 P.2d 907] that an insurer could not avoid liability for breach of the duty of good faith and fair dealing by delegating its responsibility to an independent contractor." *Barnes,* 11 P.3d 162, 167 n. 5.

**3.** The dissent argues that summary judgment should not have been granted because the trial court could not determine, on the record before it, whether MAA (the third party administrator) served as an agent for Oklahoma County or as an independent contractor. Under the facts of this case, this inquiry is legally irrelevant. The non-

delegable duty of good faith and fair dealing arises from the "special relationship" created by an insurance contract. It is undisputed that MAA was a stranger to the insurance contract between Oklahoma County and Doug Wathor. Accordingly, MAA, whether it be characterized as an agent or an independent contractor, owed no such duty to the Wathors unless it acted sufficiently like an insurer such that there was a "special relationship" between it and the Wathors to give rise to such a duty. The undisputed facts in MAA's motion for summary judgment establish that it did not act sufficiently like an insurer.

in *Wolf*. In a situation where a plan administrator performs many of the tasks of an insurance company, has a compensation package that is contingent on the approval or denial of claims, and bears some of the financial risk of loss for the claims, the administrator has a duty of good faith and fair dealing to the insured.

¶ 13 Applying this analysis to the facts of this case, we observe the following. Like the plan administrator in *Wolf*, MAA unquestionably performed some of the tasks of an insurance company in its claims handling process. However, in contrast to the facts in *Wolf*, MAA's compensation package was not tied to the approval or denial of claims but was instead a flat fee based on the number of participants in the Plan. Likewise, MAA did not share the risk of loss with the Plan if losses increased to a certain level, and did not underwrite the entire risk if losses got even higher. In other words, under the facts presented in this case, MAA had neither the power, the motive, nor the opportunity to act unscrupulously. *See Christian*, 577 P.2d at 902. Accordingly, we affirm the trial court's judgment in favor of MAA on the Wathors' bad faith claim.[4]

### III. BREACH OF CONTRACT CLAIM

¶ 14 The Wathors also contend the trial court erred in dismissing their claim for breach of contract against MAA. While the Wathors are strangers to the Administrative Service Contract between Oklahoma County and MAA, it is well settled that third party beneficiaries of a contract may maintain an action on the contract. *Keel v. Titan Constr. Corp.*, 1981 OK 148, 639 P.2d 1228; 15 O.S.

2001 § 29; *see also* 15 O.S.2001 § 29 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.").

¶ 15 Assuming, without deciding, the Wathors are third party beneficiaries of the Administrative Service Contract, that status merely entitles them to step into the shoes of Oklahoma County to enforce Oklahoma County's contractual rights against MAA. The Administrative Service Contract obligates MAA to provide claims handling service for Oklahoma County. It does not obligate MAA to pay covered claims on behalf of Oklahoma County. The relief sought by the Wathors from MAA is not claims handling service, but payment under the Plan for what they contend is covered treatment. Thus, even assuming the Wathors are third party beneficiaries of the Contract, that status does not entitle them to maintain a breach of contract action against MAA for failure to pay their claim. We affirm the trial court's judgment in favor of MAA on the Wathors' breach of contract claim.[5]

### IV. CONCLUSION

¶ 16 Because of the special relationship between insurers and their insureds, Oklahoma imposes a duty of good faith and fair dealing on insurers which gives rise to an independent action in tort. Normally we do not impose such a duty on third party administrators of health insurance plans because the administrators are not parties to the insurance contract between the insurer and the insured. *See Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, 653 P.2d 907.[6] Howev-

---

4. Although the dissent proposes to offer a different test from that adopted in *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793 (10th Cir.1995), by the Tenth Circuit, the two tests are essentially identical. The dissent would inquire as to whether the tasks of the third party administrator are "integral to the functions of an insurer and encompass a well-defined legal duty making MAA liable *qua* insurer." *Wolf* would inquire as to whether the administrator acted sufficiently like an insurer such that there is a "special relationship" between MAA and the insured that would give rise to the duty of good faith.

5. We are also convinced that the Wathors were covered for their medical expenses pursuant to

Oklahoma's portability statute, 36 O.S.2001 § 4509.2, prohibiting insurers from excluding pre-existing conditions from coverage if the insured had coverage under a previous plan. However, under the facts of this case, they were required to pursue the coverage issue against the self-insured employer, Oklahoma County, rather than against the third party administrator, MAA.

6. The dissent would extend direct liability for bad faith to the insurer's agents (*e.g.*, adjusters, claims representatives, investigators employed by the insurer, and perhaps attorneys employed by the insurer), despite the fact that these agents are not insurers and are strangers to the insurance contract which gives rise to the duty of good

er, such a duty may be imposed on a plan administrator where, under the specific facts and circumstances of the case, the plan administrator acts sufficiently like an insurer such that there is a "special relationship" between the plan administrator and the insured that gives rise to the duty.

¶ 17 The plan administrator in this case, MAA, does not act sufficiently like an insurer and therefor does not have a tort duty of good faith and fair dealing toward the Wathors. Accordingly, we affirm the trial court's judgment in favor of MAA on the Wathors' bad faith claim. ¶ 18 We also affirm the trial court's entry of judgment in favor of MAA on the Wathors' breach of contract claim. The Wathors are strangers to the Administrative Service Contract between Oklahoma County and MAA. Assuming, without deciding, that the Wathors are third-party beneficiaries of the Administrative Service Contract, that status does not entitle them to maintain a breach of contract action against MAA for failure to pay a covered claim because the Administrative Service Contract does not obligate MAA to pay covered claims on behalf of Oklahoma County.

**OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGMENT OF THE TRIAL COURT AFFIRMED.**

HODGES, LAVENDER, KAUGER, BOUDREAU, EDMONDSON, JJ., Concur.

HARGRAVE, WINCHESTER, JJ., Concur in Result.

WATT, C.J., OPALA, V.C.J., Dissent.

OPALA, V.C.J., dissenting.

¶ 1 I dissent from the court's opinion. It concludes Mutual Assurance Administrators, Inc. (MAA) had "neither the power, the motive, nor the opportunity to act unscrupulously."[1] I would reverse the summary judgment given below to MAA and remand the cause to the trial court for a thorough exploration of the status MAA occupied *vis-a-vis* Oklahoma County (the County). Summary judgment is not appropriate for this case. The record is completely devoid of evidentiary material regarding MAA's relationship to the County. The status MAA held with respect to the County is critical to determining whether MAA **may be held liable in tort** for bad faith in its handling of appellants' insurance claims.

¶ 2 Because the nisi prius analysis (and that by the Court of Civil Appeals—the COCA) is inconsistent with Oklahoma's common law, I would direct that on remand the trial court conduct a fact-based inquiry to determine whether MAA functioned as the County's non-employee agent or as an independent contractor.[2] If an agency relationship did exist between MAA and the County, the former may be liable in bad-faith tort.

faith on the part of the insurer. This is contrary to our holding in *Timmons* that agents of the insurer—even agents whose acts may have been material to a breach of the duty—do not normally owe the insured a duty of good faith since agents are not parties to the insurance contract.

The dissent also argues that the insurer "stands exonerated" if its agents (or independent contractors) bear no liability for a bad faith tort. This is simply not so. An insurer has a nondelegable duty of good faith while performing the functions of claims management, adjustment and settlement. This duty requires the insurer to take positive steps to adequately investigate, evaluate, and respond to its insureds' claims. An insurer may employ an agent or an independent contractor to perform these functions, but this does not absolve the insurer of its own nondelegable duty. If the agent or independent contractor fails to adequately perform the functions, the insurer is liable, not under the doctrine of *respondeat superior*, but because of its own failure to comply with its non-delegable duty of good faith.

1. The court comes to this conclusion based in part on the premise that an agent for a disclosed principal is not liable in an action for breach of contract. Restatement (Second) of Agency § 320. **A cause of action for breach of an insurer's duty of good faith is *ex delicto*. It was first recognized in *Christian v. American Home Assurance Co.*, where it is stated:**

    [T]his is a distinct tort based upon an implied duty of the insurer to act in good faith and deal fairly with its insured. This duty is not consensual, it is imposed by law. *Breach of the duty sounds in tort*, notwithstanding that it also constitutes a breach of contract, and plaintiff insured may recover consequential and, in a proper case, punitive damages. The essence of the cause of action is bad faith. [emphasis supplied]
    1977 OK 141, ¶ 6, 577 P.2d 899, 901.

2. For MAA's exoneration the court relies here on the decision by the United States Court of Appeals for the Tenth Circuit in *Wolf v. Prudential*

Its liability is rested on the premise that a principal may never bestow upon its agent immunity from tort the latter commits while acting for the former.[3] On the other hand, if it should be found at nisi prius that MAA is an independent contractor, the inquiry must then go further to determine whether the tasks delegated to MAA by the County (*qua* principal and insurer) are: 1) those which are either nondelegable by an insurer or integral to its functions and 2) encompass a well-defined legal duty of an insurer. If so, MAA may be found liable for its own tortious acts for which the County would also be answerable under the rule that one's breach of another's nondelegable duty makes both the actor and the holder of a nondelegable duty responsible *ex delicto*.

*Ins. Co. of America*, 50 F.3d 793 (10th Cir.1995), where an exception was made to the general rule that an agent is always liable in tort. **Wolf is neither a judicial declaration of Oklahoma's common law nor a recognized source of state law.**
I suggest a different test from that announced in *Wolf, supra.* There, the federal court focused on whether the plan administrator sufficiently "acts like an insurer ... [so] that there is a 'special relationship' between the administrator and the insured." *Id.* at 797. The *Wolf* view is plainly inconsistent with Oklahoma's common law. The correct analysis must focus on whether the specific, well-defined duty the administrator is alleged to have violated is so integral to the business of the insurer-hirer as to make it nondelegable. *Coe v. Esau*, 1963 OK 1, ¶¶ 11–15, 377 P.2d 815, 819. For a discussion of the principle of nondelegable duty, see *infra* Part III(D) ¶¶ 13–16 of the text.

3. The heart of agency is expressed in the ancient common-law maxim *qui facit per alium facit per se* (the act of the agent or servant is the act of the principal or master). *Sisk v. J.B. Hunt Transport, Inc.*, 2003 OK 69, ¶ 7 n. 15, 81 P.3d 55; *State ex. rel. Oklahoma Bar Ass'n v. Taylor*, 2000 OK 35, ¶ 19 n. 31, 4 P.3d 1242, 1251; *Nelson v. Pollay*, 1996 OK 142, ¶ 7 n. 23, 916 P.2d 1369, 1374; *North Side State Bank v. Board of County Com'rs of Tulsa County*, 1994 OK 34, ¶ 14 n. 25, 894 P.2d 1046, 1051 n. 25; *Anderson v. Eichner*, 1994 OK 136, ¶ 12 n. 24, 890 P.2d 1329, 1337. As the Restatement (Second) of Agency § 343 states "[a]n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal ..."

# I

## ANATOMY OF LITIGATION

¶ 3 Appellants, Doug and Sharon Wathor, brought suit against appellee, MAA, alleging breach of contract and breach of an insurer's duty of good faith and fair dealing in failing to settle their claim for certain medical expenses incident to a pre-existing condition. At nisi prius summary judgment went to MAA. **The COCA affirmed, holding that MAA, as a third-party administrator, is not subject to an insurer's duty of good faith.**[4] *Appellants sought certiorari to determine whether a third-party administrator of an insurer may be liable in tort for bad-faith denial of a claim.*

The rule of law that an agent is not excused when committing tortious or criminal conduct is widely recognized. In an early Oklahoma case it is expressed thusly:
The law of principal and agent does not apply when the agent, in pursuit of a lawful purpose, sets aside, and engages in the commission of a wrong, to the injury of the property or personal rights of another ... Instead of the relation of the principal and agent existing and the law relating thereto being applicable, the transaction resolves itself into a conspiracy between and among the parties engaged in the commission of the wrong, and each and every party accepting benefits with knowledge of the wrong, and aiding or engaging in the wrong, are tort-feasors, and the law will hold each party jointly and severally liable in damages for the injury suffered by the wronged person. *Rogers v. Brummett*, 1923 OK 711, ¶ 3, 220 P. 362, 365.
The United States Supreme Court took a similar position when it stated that "[N]either a state nor an individual can confer upon an agent authority to commit a tort so as to excuse the perpetrator." *Hopkins v. Clemson Agric. College of South Carolina*, 221 U.S. 636, 643, 31 S.Ct. 654, 656–57, 55 L.Ed. 890 (1911).

4. The COCA limited its holding to the specific facts of this case, stating "[MAA] does not act like an insurer such that there is a special relationship between it and Plaintiff that could give rise to the duty of good faith." For its conclusion the COCA represents that it has relied on this court's decision in *Christian, supra* note 1. **I find no support in *Christian* for COCA's quoted statement of the pertinent rule.**

## II

### SUMMARY JUDGMENT IS NOT APPROPRIATE FOR THIS CASE BECAUSE THE NISI PRIUS COURT MUST FIRST DETERMINE THE STATUS MAA HELD *VIS–A–VIS* OKLAHOMA COUNTY, THE INSURER

¶ 4 The *sine qua non* analysis to be made here **must begin** by first determining whether MAA stood towards the County in the status of a non-employee agent or of an independent contractor.[5] The MAA's status is material because: 1) if MAA acted as an agent, liability may be imposed here because an agent, while acting for the principal, cannot insulate itself from tort liability [6] and 2) if MAA served as an independent contractor, liability may nonetheless be visited if MAA was performing a core function of the County and its well-defined duty as an insurer.[7]

¶ 5 Summary judgment is permissible **only if** no substantial controversy exists as to any material fact.[8] When the record is devoid of evidentiary material that shows undisputed facts supportive only of inferences that favor the movant, it is error to decide the case by summary process. Disputed issues of fact must be resolved by trial, the law's very antithesis of summary decision-making. Whether a principal/agent relationship exists presents generally a question of fact to be resolved at nisi prius.[9]

¶ 6 Existence of a principal/agent relationship is determined by considering the actual intent and effect of the contract's language **in light of the parties' actual day-to-day conduct *vis-a-vis* one another.**[10] The label used by the contracting parties to define their relationship does not alone determine whether they in fact stand *vis-a-vis* one another in a principal-agent relation.[11] The central factor in determining whether an agency relationship exists is the principal's right to, as well as its exercise of, control over the agent.[12] The essence of a principal/agent status is the principal's power to give directions and the agent's duty to obey them.[13] If a right of control is present, a

---

5. Agency is governed by common-law principles. See Restatement (Second) of Agency.

6. Based on the common-law duty that all individuals must act or refrain from acting in a manner that brings harm to others, an agent cannot insulate itself from tort liability. Whether acting on his own behalf or on behalf of his principal, an agent will not be relieved from the consequences of his tort merely because he (or she) stood in an agency relationship when the tort occurred. *Hopkins, supra* note 3 at 643, 31 S.Ct. 654; Restatement (Second) of Agency § 343, *supra* note 3.

7. A finding that MAA served as independent contractor does not complete the required analysis. The trial court must next determine whether the County delegated to MAA a well-defined duty integral to its business as an insurer. If MAA performed obligations integral to those of the insurer and involving the latter's well-defined legal duty to the insured, it may be liable *qua* insurer.
For example, each Oklahoma insurer has a nondelegable duty to settle claims in good faith. Settling and paying claims is the most basic function of an insurer. *Christian, supra* note 1, at ¶ 25, 577 P.2d at 904 ("We approve and adopt the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured"); *Coe, supra* note 2, at ¶¶ 12–15, at 819; *Taylor v. State Farm Fire and Casualty Co.,* 1999 OK 44, ¶ 9 n. 19, 981 P.2d 1253, 1258 n. 19. When MAA carries out this duty it acts exactly as if it were the insurer. If MAA, as an independent contractor, discharges the duty (of paying or settling claims) in bad faith MAA is liable *qua* insurer. Any other result would be contrary to the principles of common-law tort liability. In short, MAA, or any other entity, when acting **as or for** an insurer, must be held to the same standard of good faith and fair dealing as an insurer itself.

8. *Hinson v. Cameron,* 1987 OK 49, ¶ 5, 742 P.2d 549, 551, *citing Flanders v. Crane Co.,* 1984 OK 88, 693 P.2d 602, 602.

9. *A–Plus Janitorial & Carpet Cleaning v. Employers' Workers' Compensation Ass'n,* 1997 OK 37, ¶ 32, 936 P.2d 916, 930.

10. *Enterprise Management Consultants, Inc. v. State of Oklahoma ex rel. the Oklahoma Tax Comm'n,* 1988 OK 91, ¶ 6 n. 12, 768 P.2d 359, 362 n. 12.

11. *Enterprise Management Consultants, Inc., supra* note 10, at ¶ 6 n. 12, 362 n. 12.

12. *Enterprise Management Consultants, Inc., supra* note 10, at ¶ 6 n. 13, 362 n. 13; *Coe, supra* note 7, at ¶ 8, 377 P.2d at 818.

13. *Enterprise Management Consultants, Inc., supra* note 10, at ¶ 6 n. 13, 362 n. 13. *See also* Restatement (Second) of Agency § 1 which de-

principal/agent relationship may be found and the tort doctrine of *respondeat superior* liability invoked. On the other hand, if the right of control be absent, the relationship is likely to be that of an independent contractor.[14] **In a case like this, finding that MAA served the County as independent contractor will not by itself absolve MAA of its legal responsibility.** If the County delegated to MAA a well-defined duty integral to its business as insurer, MAA may nonetheless stand liable *qua* insurer.

¶ 7 The record contains no evidentiary material for resolution of the critical fact issue of whether MAA acted for the County as its agent or as an independent contractor. If the latter, what were MAA's duties? MAA's status *vis-a-vis* the County must be resolved **before** it may be determined whether liability is imposable on MAA for failing to settle the claim in suit in good faith.

## III

### WHETHER BY ACCIDENT OR DESIGN, TODAY'S PRONOUNCEMENT EMASCULATES THE BAD FAITH *CHRISTIAN* TORT AND SENDS IT ON A CHAOTIC PATH TO VIRTUAL EXTINCTION

#### A.

*Today's Refinement Of The Mandatory Relationship Between the Insured-plaintiff and the Policy-writing Insurer Who Failed, Directly or Through Others, to Settle the Claim in Good Faith Imposes a New Actionability Requirement That Is Inconsistent With the Teachings of Christian and its Progeny*

¶ 8 *Christian*[15] fashioned a new delictual liability of an insurer who refuses to settle in good faith a claim for a covered loss. Later jurisprudence fine-tuned the parameters of the new tort by requiring that standing to press a *Christian* claim for vindication be confined to persons who, *vis-a-vis* the insurer, occupy the status of an insured.[16] Third-party beneficiaries of an insured's policy-covered loss are without standing.[17] By today's footnote [18] the court **further refines the mandatory relationship of the insured-plaintiff *vis-a-vis* the insurer-defendant by requiring that henceforth actionable harm be inflicted by one who also stood in a contractual status *vis-a-vis* the plaintiff. This will doubtless deprive aggrieved parties of standing against all of insurer's (non-employee) contractually-engaged agents (or insurer-hired independent con-**

---

fines the principal/agent status as "a fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and *subject to his control,* and consent by the other so to act." [Emphasis added.]

**14.** The Restatement (Second) of Agency § 2(3) defines an independent contractor as "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

**15.** *Supra* note 1.

**16.** *Allstate Ins. Co. v. Amick,* 1984 OK 15, ¶¶ 14–15, 680 P.2d 362, 364–65. *Amick* limited the outer reach of the *Christian* tort's benefit only to those who stood *vis-a-vis* the defendant-insurer in a relationship of insured. *Amick's* circumscription of the **standing zone for plaintiffs does not require that recoverable harm must be inflicted by one acting for the insurer who also stands *vis-a-vis* the insured in a contractual relation.** The addition of the latter requirement is today's *ipse dixit.*

**17.** *See* authorities *infra* note 23.

**18.** *See* ¶ 8 n. 3 of the court's opinion.

tractors who perform for the insurer the duties of claims management, adjustment and settlement).

¶ 9 Whether by design or accident, this new *sine qua non* relationship of the insured to every bad-faith defendant will have a far-reaching impact on the future complexion of that tort. **Corporate insurers do business only through others**—human agents or corporate contractors. If, as the court appears to declare today, insurer's agents (or independent contractors) **bear no liability for a bad-faith tort while not insurers themselves but rather on a mission for the insurer, the insurer itself stands exonerated by operation of law and by issue preclusion.**[19] **This is so because the law will recognize no vicarious responsibility for non-tortious acts of a contractually engaged (non-employee) agent or for the independent contractor's non-tortious discharge of nondelegable duties.**[20] Putting the principle in simpler language, vicarious liability is not imposable where no action-

able claim may be pressed against the actor and there is no allegation of an independent tort by the vicariously liable obligor.[21] Today's pronouncement is final and releases the Administrator of its bad-faith liability. Relitigation of the very same issue against the insurer *qua* principal obligor on a theory of vicarious liability is barred by the doctrine of issue preclusion.[22]

## B.

### *Christian's Progeny Requires Of A Plaintiff No More Than An Insured/Insurer Relation with The Policy-issuing Insurer*

¶ 10 The court cavalierly declares the Administrator's status *vis-a-vis* the County as "legally irrelevant." This is so because the court concludes the harmed plaintiffs lacked a contract-based "special relationship" *vis-a-vis* the Administrator. This very pronouncement infuses the *Christian* tort with nothing short of legal schizophrenia. The "special relationship" our jurisprudence requires is

**19.** The court creates a *legal paradox* when it strains to hold that an insurer's agents and all of its independent contractors are not liable in tort. This would make the insurer's liability exclusive. But insurers are corporate bodies and cannot act without human agents. By immunizing non-employee agents from bad-faith torts committed for the principal, the court today is setting insurers' controlled instrumentalities on a liability-free bad-faith frolic.

**20.** Vicarious liability is imposed by law when one person is made answerable for the **actionable conduct** of another. *Braden v. Hendricks*, 1985 OK 14, ¶ 18, n. 24, 695 P.2d 1343, 1351, n. 24. Restatement (Third) of Torts § 13 (Vicarious Liability), Comment a: "In a number of contexts, the responsibility of one actor is legally imputed to another, and vicarious liability is imposed. The most familiar example is *respondeat superior*—the liability of a principal for the tortious acts of an agent and that of a master for tortious acts of a servant. *See* Restatement Second, Agency §§ 219, 243–245. In some circumstances the employer [hirer] of an independent contractor may be held liable for the negligence of the [independent] contractor. *See* Restatement Second, Torts §§ 416–429."

It is axiomatic that a principal cannot be made liable by application of respondeat superior if the agent's actions are not actionable. *Cnota v. Palatine Area Football Ass'n*, 227 Ill.App.3d 640, 169 Ill.Dec. 709, 592 N.E.2d 196, 204 (1992); *Dumas v. Lloyd*, 6 Ill.App.3d 1026, 286 N.E.2d 566, 569 (Ill.App.1972); *Peoples v. Conway*, 897

S.W.2d 206, 208 (Mo.App.1995) (where an employee is exonerated of respondeat superior liability the employer also must stand exonerated); *Fish v. Southern Pacific Company*, 173 Or. 294, 143 P.2d 917 (1943), *reh. den.* 173 Or. 294, 145 P.2d 991 (1944) (where vicarious liability is based solely on the wrongful act of an agent, exoneration of the agent exonerates the principal).

**21.** A voluntary affirmative act by which an actor in the respondeat superior setting is released also releases the master's liability. *Sisk, supra* note 3, at ¶ 7 ("The common-law doctrine [of vicarious liability] teaches that an effective release of the servant operates to release the master.").

**22.** *See, e.g., Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 272 Ga. 209, 528 S.E.2d 508, 510 (2000); *Harris v. St. Mary's Medical Center, Inc.*, 726 S.W.2d 902, 905 (Tenn.1987); *Gibson Lumber Co. v. Neely Coble Co., Inc.*, 651 S.W.2d 232, 234 (Tenn.App.1983); *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill.2d 507, 111 Ill.Dec. 944, 513 N.E.2d 387, 399 (Ill. 1987); *Towns v. Yellow Cab Co.*, 73 Ill.2d 113, 22 Ill.Dec. 519, 382 N.E.2d 1217, 1221 (1978). Issue preclusion prevents relitigation of facts and other issues actually litigated and necessarily determined in an earlier proceeding between the same parties or their privies (or others if the issues were fully and fairly litigated). *Underside v. Lathrop*, 1982 OK 57, ¶ 6 n. 8, 645 P.2d 514, 517 n. 8; *Veiser v. Armstrong*, 1984 OK 61, ¶ 8 n. 9, 688 P.2d 796, 800 n. 9.

that between the policy-writing insurer and its insured and not that between the insured and the insurer's (non-employee) agents (or its independent contractors hired to manage, adjust or settle claims). It is sufficient for liability's imposition to show that the insurer is the defendant's principal or its hirer (for claims settlement tasks).[23] No extant source of Oklahoma law requires that bad-faith harm be inflicted directly by the insurer (without interposition of controlled instrumentalities) or that every bad-faith defendant stand *vis-a-vis* the plaintiff in a policy-based contractual relationship. The law merely confines an insurer's *Christian* tort liability to those who stand in the status of an insured *vis-a-vis* the insurer of the loss.[24]

### C.

***Today's Added Requirement—That Every Bad-faith Defendant Stand Vis-a-vis the Plaintiff in the Relation of Insurer—Will Have A Predictably Destructive Impact on the Future Course of the Christian Tort***

¶ 11 **Today's** summary exoneration of the Administrator most assuredly crafts **tomorrow's** ready-made liability-defeating defenses. Insurers (and all those acting for them except possibly their direct employees) will invoke these defenses because the immunization of their actors will effectively exonerate the hirers.[25] The liability shield they will raise is that which the court has fashioned for them here.[26] They will doubtless focus their quest for immunity from liability on want of insurer/insured relationship between the plaintiff and the harm-dealing actor clad

or masquerading in the lawsuit **as an independent third-party entity.** If successful, insurers will hasten to transfer the function of managing, adjusting and settling claims to a third party, all in an effort to escape responsibility for bad-faith refusal to settle covered losses. If this is what the court desires to spawn, its pronouncement should crisply say so. **If not, the Administrator's status does indeed matter. It must be fully explored and settled before exoneration may be effected.**

¶ 12 The ominous cloud the court has cast over the insurer's bad-faith liability should be allowed **neither** to disturb the industry's business **nor** plant doubt in the minds of the insureds. **Delphic oracles** no less than revolutionary legal changes rob the law and the public marketplace of a badly needed opportunity for orderly business growth in an atmosphere of calm and stability. Uncertainty generated by shifting judicial climates tends to have a disruptive effect on day-to-day activity and adversely to affect the quality of deliverable legal-advice services.

### D

***The Principle of Nondelegable Duty Operates To Extend the Hirer's (County's) Liability But Does Not Exonerate the Actor (Administrator) of its Individual Tort Liability; The Latter Is Secondarily Liable for the Bad-faith Tort and Would Have an Equitable Indemnity Claim Against the Primarily Liable Actor/Hirer***

¶ 13 From a statement in *Timmons v. Royal Globe*[27] (that an insurer has a nondelegable duty to settle in good faith), the court draws an utterly unwarranted conclusion that its *Timmons* pronouncement is broad

---

**23.** If there was an insurer-insured relationship between the plaintiffs and the insurance entity for whom the Administrator (or its hired independent contractor) was acting when harm stood inflicted, the "special relationship" that *Christian's* progeny requires stands satisfied. *See Kuykendall v. Gulfstream Aerospace Technologies,* 2002 OK 96, ¶ 19, 66 P.3d 374, 382; *First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland,* 1996 OK 105, ¶ 20 n. 31, 928 P.2d 298, 306–07; *Gianfillippo v. Northland Cas. Co.,* 1993 OK 125, ¶¶ 8–10, 861 P.2d 308, 310 (an injured auto passenger covered by the driver's liability insurance policy may not bring a bad-faith action against the insurer); *Goodwin v. Old Republic*

*Ins. Co.,* 1992 OK 34, ¶ 6, 828 P.2d 431, 432–33; *Amick, supra,* note 16, at ¶¶ 14–15, at 364–65.

**24.** *Amick, supra,* note 16, at ¶¶ 14–15, at 364–65.

**25.** *Sisk, supra* note 3, at ¶ 7.

**26.** The court today exonerates the insurer from (a) *respondeat superior* liability and (b) liability for the acts of those who breach the insurer's nondelegable duties.

**27.** 1982 OK 97, ¶ 22, 653 P.2d 907, 914.

enough to exonerate every non-employee agent and every independent contractor of its individual liability. **In doing so, the court magnifies the principle of nondelegable duty beyond its legal limit by stretching it into immunity from tort liability—a concept not included in the construct.** The teachings of *Timmons* clearly do not include exoneration extending that far.

¶ 14 The principle of nondelegable duty [28] is an exception to the general rule [29] that the hirer of an independent contractor is not ordinarily liable for the negligence of the independent contractor. The nondelegable-duty concept **operates to extend the hirer's liability.** This is so because that liability extends to the torts of the hirer's independent contractors, but **it does not relieve the independent contractors of individual tort liability.**[30] If there is recovery against an independent contractor,[31] the latter will, based on equitable indemnity, have a claim against the hirer with a nondelegable duty.[32]

¶ 15 Indemnity is a right which inures to one who discharges a duty owed by him, but

**28.** **One who owes a nondelegable duty to another cannot escape liability for its performance by engaging an independent contractor.** In such cases, the rule that the hirer is not liable for actionable conduct of an independent contractor will not be applied. *Braden v. Hendricks*, 1985 OK 14, ¶ 19, 695 P.2d 1343, 1352, n. 26; *Shell Pipe Line Corp. v. Curtis*, 1955 OK 212, ¶ 13, 287 P.2d 681, 685; *Allied Hotels, Limited v. Barden*, 1964 OK 16, ¶ 15, 389 P.2d 968, 971. In *Oklahoma Ry. Co. v. Boyd*, 1929 OK 82, 282 P. 157, 162, 140 Okl. 45, it is said, "Where one owes a nondelegable duty to third persons, he cannot escape the obligation of performing such duty by engaging for its performance through or by a contractor, and in such cases the rule that an employer is not liable for the negligence of an independent contractor has no application." *See Copeland v. The Lodge Enterprises, Inc.*, 2000 OK 36, ¶ 12, n. 26, 4 P.3d 695, 700 *quoting Great American Indemnity Co. v. Deatherage*, 1935 OK 1156, 52 P.2d 827, 830–31, 175 Okl. 28 ("... the general rule of nonliability of the contractee is that one on whom the law imposes a positive duty to the public or an individual cannot escape the responsibility of seeing that duty performed by delegating it to an independent contractor, and will be liable for injuries resulting from the contractor's negligence in the performance thereof"); *U.S. Security Services Corp. v. Ramada Inn, Inc.*, 665 So.2d 268, 270 (Fla.App.1995). For a discussion of nondelegable duty owed by a public utility, see *Bouziden et al. v. Alfalfa Elec. Co-op., Inc.*, 2000 OK 50, 16 P.3d 450, 462–63 (Opala, J., dissenting). Nondelegable duties are addressed in the Restatement (Second) of Torts §§ 416–425. The theory of **nondelegable duties** is also dealt with in § 214 of the Restatement (Second) of Agency, which states: "A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other person is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty."

**29.** For the general rule of nonliability see Restatement (Second) of Torts § 409. Its terms are:

Except as stated in §§ 410 to 429, the employer of an independent contractor is not subject to liability for bodily harm caused to another by a tortious act or omission of the contractor or his servants.

**30.** *Sisk, supra* note 3, at ¶ 7.

**31.** In *Copeland v. The Lodge Enterprises, Inc.*, 2000 OK 36, ¶ 12, n. 25, 4 P.3d 695, the court states:

"The rule in Oklahoma is that a person who performs work through an independent contractor is not liable for damages to third persons caused by the negligence of the contractor **except** where the work is inherently dangerous or unlawful or where the employer owes a contractual **or defined legal duty to the injured party in the performance of the work.**" (emphasis added). *Williamson v. Fowler Toyota, Inc.*, 1998 OK 14, ¶ 7, 956 P.2d 858, 860, *quoting* from *Hudgens v. Cook Industries, Inc.*, 1973 OK 145, ¶ 11, 521 P.2d 813, 815. *See also, Huckins Hotel Co. v. Clampitt*, 1924 OK 142, 101 Okl. 190, 224 P. 945, 946–947, *Minnetonka Oil Co. v. Haviland*, 1916 OK 103, 55 Okl. 43, 155 P. 217, 219; W. Page Keeton *et al*, Prosser and Keeton on the Law of Torts § 71, at 511–512 (5th Ed.1984).

*Copeland* teaches that while an innkeeper may hire an independent contractor to perform the former's nondelegable duty, he (or she) may not pass off to an independent contractor the ultimate legal responsibility for the proper performance of that duty. *Id.* at ¶ 12; *Deatherage, supra* note 28 at 830–31. Under the nondelegable duty rule, an innkeeper may be held vicariously liable for an independent contractor's failure to exercise reasonable care even if the innkeeper has itself exercised due care.

**32.** *Porter v. Norton Stuart Pontiac–Cadillac of Enid*, 1965 OK 18, ¶ 0, syl., 405 P.2d 109, 110 ("Where two parties are jointly liable to a third party ... [for] a tort, one of them primarily for the reason that he is the actual wrongdoer, and the other secondarily and constructively under the rule of respondeat superior but without any

which, as between himself and another, should have been discharged by the other.[33] The remedy of indemnity is appropriate where one party has a primary or greater liability or duty which requires him to bear the whole of the burden as between the parties.[34] The indemnity concept transfers liability from one who has been compelled to pay damages to another **where the entire loss should have been borne by a third party.**[35] In short, where two parties are separately liable to a third party for a bad-faith tort, one of them **primarily** (because it has a **nondelegable duty),** and the other **secondarily,** if there is recovery against the secondary obligor, the latter would have an equitable indemnity claim [36] against the primary obligor.

¶ 16 The County and Administrator bear separately liability for the latter's bad-faith refusal to settle covered losses. The County is the primary obligor because it has a non-delegable duty (*qua* insurer) to settle claims in good faith and cannot escape its liability by engaging an independent contractor. The Administrator, who is a secondary obligor

---

but was sued alone, would have an indemnity claim against the County. By immunizing the Administrator today's pronouncement will make the so-called liability for nondelegable duty unenforceable. This is so because no one can be vicariously liable for the acts of another which are not actionable.[37]

### E.

### *The Notion of Immunizing from Bad–Faith Tort Liability Third Parties Acting As (Non-employee) Agents and Independent Contractors In Managing, Adjusting and Settling An Insurer's Claims offends the Procedural Symmetry Mandated By Art. 5, § 46, Okl. Const.*[38]

¶ 17 Assuming the court intends to let the *Christian* tort die a slow and painful death to be inflicted by the insured's lack of standing to proceed against the insurer-controlled instrumentalities—*i.e.,* human or corporate non-employee agents (or insurer-hired independent operators)—its jurisprudence runs afoul of Oklahoma's constitutional interdiction of law that is **special.**[39] Today's pro-

---

fault having a causal connection with the third party's injuries, the latter may recover from the former the amount he has been compelled to pay as damages for the injury"). *See* Restatement (First) of Restitution § 76 ("A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.").

33. *Porter, supra* note 32 at 113.

34. *Id.*

35. *Id.*

36. Noncontractual or equitable indemnity may arise from a legal relationship between the parties. *(National Union Fire Ins. Co. v. A.A.R. W. Skyways, Inc.,* 1989 OK 157, 784 P.2d 52, 54; *Travelers Ins. Co. v. L.V. French Truck Serv., Inc.,* 1988 OK 76, 770 P.2d 551, 555 n. 16 (Okla. 1988)). One who is only secondarily obligated to pay damages would have an indemnity claim against the primary obligor who owes a nondelegable duty. *Porter, supra* note 32 at 113.

37. *Sisk, supra* note 3, at ¶ 7. *Sisk* teaches that there can be no vicarious liability for another's acts that are immunized. By today's exoneration of the actor, the court's declaration that it has

---

preserved the insurer's liability for a nondelegable duty becomes illusory.

38. The pertinent terms of Art. 5 § 46, Okl. Const., are:

"The legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
\* \* \*
Regulating the practice or jurisdiction of . . . in judicial proceedings or inquiry before the courts . . . or other tribunals. . . . . ."

39. *See* the terms of Art. 5 § 46, Okl. Const., *supra* note 38. Special laws are those which single out less than an entire class of similarly affected persons or things for different treatment. If a rule of law is special, § 46 absolutely and unequivocally prohibits its passage as law. *Reynolds v. Porter,* 1988 OK 88, ¶¶ 13–21, 760 P.2d 816, 821–24. In *Porter* the court held that making a statute of limitations applicable to one tort—*i.e.,* singling out one tort for a different limitation from that which is applicable to other torts of the same rubric—violates Art. 5 § 46, Okl. Const., because it provides disuniform procedures for a tort of like attributes. By today's pronouncement all tortfeasors, **except insurers in bad-faith cases,** would remain liable under *respondeat superior* for the torts of their agents and jointly for the torts of those independent contractors upon whom an obligation can be imposed.

nouncement is indeed special law. It changes time-honored common-law tort liability principles by making non-employee agents and other operators immune from delictual liability. They stand exonerated by want of a **direct contractual insurance-anchored nexus with the plaintiff.**

## IV

### SUMMARY

¶ 18 This case was incorrectly decided by summary process. That process was inappropriately applied. Full-scale inquiry into MAA's status *vis-a-vis* the County is required to determine whether MAA may be held liable in bad-faith tort. No court can decide, on this record, whether MAA served as a non-employee agent for the County or as an insurer-hired independent contractor performing well-defined core functions of an insurer. Because the conduct of the contracting parties (MAA and the County), one toward the other, has not been inquired into, no conclusion may be drawn at this stage as to the Administrator's liability.

¶ 19 If MAA was a non-employee agent, it may be liable in tort to the same extent as its principal (the County). If MAA was in fact an insurer-hired independent contractor performing a well-defined core function of the insurer (County), MAA may also be declared liable *qua* insurer.

¶ 20 There is no extant state jurisprudence supporting the notion foisted here today that for imposition of bad-faith liability, if the insurer's claims management function is handled by a third party, the third party must also stand *vis-a-vis* the insured in an insurer/insured relationship. **Extant precedent requires no more than that an insurer/insured relation subsist solely between the plaintiff and the policy-issuing entity for the covered claim.** If the court intends to now abandon or abrogate its *Christian* progeny, its opinion should clearly and explicitly

---

Creating a single exemption from the *respondeat superior* liability class would similarly fall under the axe of a special-law condemnation.

Our own jurisprudence, no less than the Legislature's enactments, must faithfully conform to the state fundamental law's interdiction of disuniform laws on prohibited subjects. *Johnson v.*

---

state so. If that is not its intention, it ought not leave the bad-faith tort in a hopelessly chaotic aftermath. An explanation is due on how an insured may proceed when the bad-faith refusal to settle is occasioned directly by the insurer's (non-employee) human or corporate agency or by its independent hiree assigned the task of management, adjustment and settlement of losses.

¶ 21 I would reverse the trial court's summary exoneration of MAA and remand the cause for further proceedings to be conducted in a manner fully consistent with a piercing analytical inquiry urged by this dissent for post-remand proceedings.

*Tony's Town Mister Quik,* 1996 OK 138, ¶ 5, n. 10, 915 P.2d 355, 357–58; *Haynes v. Tulsa Public Schools Transit,* 1994 OK 86, ¶ 5, 879 P.2d 128, 131 (Opala, J., concurring); *Great Plains Federal S & L Assn. v. Dabney,* 1993 OK 4, ¶ 2, 846 P.2d 1088, 1095–96 (Opala, J., concurring).