2006 OK CIV APP 18

**Randall William KENNEDY, Surviving Spouse and Special Administrator of the Estate of Peggy Jo Kennedy, Deceased, Plaintiff/Appellant,**

v.

**MIDWEST CITY H.M.A., INC., d/b/a Midwest Regional Medical Center, an Oklahoma corporation; Joel Anderson, M.D., individually and as agent, servant and employee of Midwest City, H.M.A., Inc., Defendants/Appellees.**

**No. 101,504.**

Court of Civil Appeals of Oklahoma,
Division No. 3.

Oct. 28, 2005.

Rick E. Romano, Oklahoma City, OK, for Appellant.

Cynthia L. Sparling, Geremy A. Rowland, Short Wiggins Margo & Butts, Oklahoma City, OK, for Appellee Joel Anderson, M.D.

John R. Paul, Eric G. Lair, The Paul Law Firm, Oklahoma City, OK, for Appellee Midwest City H.M.A., Inc. d/b/a Midwest Regional Medical Center.

Opinion by LARRY JOPLIN, Presiding Judge.

¶1 Plaintiff/Appellant Randall William Kennedy (Plaintiff) seeks review of the trial court's order granting summary judgment on joint motion of Midwest City H.M.A., Inc. d/b/a Midwest Regional Medical Center (Midwest Medical Center) and Joel Anderson, M.D. (Dr. Anderson, or, collectively, Defendants). Plaintiff contends the trial court erred in granting summary judgment to Defendants because the evidentiary mat-

ters demonstrated a controversy of material fact, and because the trial court failed to consider supplementary materials. Defendants contend summary judgment was warranted based upon the testimony of expert witnesses. Having reviewed the record, we hold the order of the trial court should be reversed, and the cause remanded for further proceedings.

¶2 On July 17, 2000, forty-two-year-old Peggy Jo Kennedy came to the emergency room of Midwest Medical Center at 11:37 p.m., and was seen by emergency room physician, Dr. Joel Anderson. She complained of sharp chest pain (10 on a scale of 1 to 10) although she had taken nitroglycerin. She was a smoker, obese and had a "strong" family history of heart disease; her sister died at age forty-five from myocardial infarction and four of her siblings had stents. She also had a heart attack the month before.[1]

¶3 The EKG test administered in the ER revealed *abnormal* results, but within two and one-half hours of her arrival, Dr. Anderson discharged Mrs. Kennedy without admitting her to the hospital or obtaining a cardiology opinion that discharge was warranted. Later that afternoon, Mrs. Kennedy suffered a heart attack and died. Plaintiff sued Dr. Anderson for medical negligence and sued Midwest Medical Center on the theory of vicarious liability.

¶4 We review the trial court's order granting summary judgment under a *de novo* standard. *Wathor v. Mutual Assur. Adm'rs, Inc.*, 2004 OK 2, ¶4, 87 P.3d 559, 561. "We review all inferences and conclusions to be drawn from underlying facts contained in evidentiary materials in a light most favorable to the party opposing the motion." *Wathor*, 2004 OK 2, ¶4, 87 P.3d at 561; *Sperling v. Marler*, 1998 OK 81, ¶3, 963 P.2d 577, 579. Only where the evidentiary materials show "no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law" is summary judgment permitted. Rule 13(e), Rules for District Courts of Oklahoma, 12 O.S., Ch. 2, App. "[S]ummary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of overkill in its use." *Weaver v. Pryor Jeffersonian*, 1977 OK 163, ¶39, 569 P.2d 967, 974.

¶5 "The burden is on the moving party to establish, through evidentiary material attached to the motion for summary judgment, that no genuine issue as to any material fact exists." *Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶7, 963 P.2d 572, 574. (Citations omitted.) "Thereafter, the opposing party must submit a statement of material facts which the party alleges are controverted and which are supported by evidentiary materials." *Id.* To establish a right to recovery based upon the theory of medical negligence, the plaintiff must establish the following *prima facie* elements: "(a) duty owed by the defendant to protect the plaintiff from injury, (b) a failure to properly exercise or perform that duty and (c) plaintiff's injuries proximately caused by the defendant's failure to exercise his duty of care." *Thompson v. Presbyterian Hospital*, 1982 OK 87, ¶7, 652 P.2d 260, 263.

¶6 Plaintiff produced an ER expert witness, Dr. John Dunn, who essentially testified that, based upon the abnormal EKG test results and medical history, there were unanswered questions that needed to be resolved by a cardiologist. Dr. Dunn testified that the standard of care for emergency room physicians required Dr. Anderson to have a cardiologist decide whether to discharge Mrs. Kennedy. Because Dr. Anderson did not contact a cardiologist before discharge, he breached his duty of care to Mrs. Kennedy.

¶7 Plaintiff also presented evidentiary materials of a cardiologist, Dr. Ralph Lazzara, that, based upon the facts, history, symptoms and ER test results, a cardiologist following applicable standards of care would have advised Dr. Anderson to admit Mrs. Kennedy to the hospital.[2] Dr. Lazzara also stated that

---

1. There is a question raised in the record regarding whether Dr. Anderson was aware that Mrs. Kennedy suffered a heart attack the month before she came to the ER.

2. Plaintiff submitted a letter signed by cardiologist Dr. Lazzara in response to Defendants' motion for summary judgment. Evidentiary material submitted in reference to a summary judgment motion must be convertible to admissible evi-

there is treatment which is generally effective for the heart condition from which he opined Mrs. Kennedy suffered. Thus, there is evidence in the record from which a jury could conclude that injury resulted from breach of the duty of care requiring a cardiologist to decide whether to admit or discharge Mrs. Kennedy.[3]

¶ 8 In support of summary judgment, Defendants argue that Plaintiff's ER expert, Dr. Dunn, testified that he would defer to a cardiologist's opinion whether to admit Mrs. Kennedy, and that it is apparent that Dr. Thomas Russell, Mrs. Kennedy's cardiologist since 1993, is the cardiologist who *would have* been called. Defendants presented evidentiary materials from Dr. Russell argued to show that it was Dr. Russell's opinion that Mrs. Kennedy did not need hospitalization or treatment. Thus, say Defendants, there was no violation of the standard of care, and summary judgment was warranted. However, a review of the record shows Defendants were not entitled to summary judgment.

¶ 9 First, the Russell evidentiary materials do not conclusively establish that, under all the facts and circumstances, even *he* wouldn't have admitted her that night. Defendants submitted the affidavit of Dr. Russell containing the averment that Mrs. Kennedy's "... admission to Midwest Regional Medical Center was not warranted based *solely* upon the EKG readings obtained by Dr. Anderson." (Emphasis added.) Dr. Russell's affidavit does not contain an averment that under all factors present, Mrs. Kennedy's admission to the hospital was not warranted.

¶ 10 Defendants also submitted Dr. Russell's deposition testimony argued to show that it was Dr. Russell's opinion that Mrs. Kennedy did not need to be hospitalized or treated. However, Dr. Russell testified that he "would not have felt strongly" that Mrs. Kennedy had to be admitted *if* there had been *negative* EKG and blood marker test results. He further testified that the EKG test results were abnormal and that it can take up to four hours for some cardiac markers to show up in blood tests. Mrs. Kennedy was in the emergency room for only two and one-half hours.

¶ 11 Second, even if Dr. Russell were to testify that he would not have admitted Ms. Kennedy, Dr. Dunn testified that the defendant ER physician, Dr. Anderson, had a duty to admit Mrs. Kennedy, or obtain a cardiologist's opinion *before* discharging her. The record is clear Dr. Anderson did neither.

¶ 12 Finally, Dr. Dunn's testimony concerning deference to a cardiologist refers to a cardiologist's opinion rendered at the time of Mrs. Kennedy's care. Obviously, an opinion given *after the fact* raises questions as to what the opinion may have actually been *at the time*, and whether such opinion establishes a violation of the duty of care by a cardiologist. These questions should be determined by a jury.

■ ¶ 13 Based upon this record and the conflicting expert testimony, a jury might well conclude that Dr. Anderson violated his duty of care by failing to admit Mrs. Kennedy to the hospital, or consult with a cardiologist before her discharge. We consequently conclude the trial court erred in granting summary judgment.

¶ 14 The order of the trial court granting summary judgment for defendants is therefore REVERSED AND THE CAUSE REMANDED FOR FURTHER PROCEEDINGS.

HANSEN, J., and BUETTNER, C.J., concur.

---

dence at trial. Rule 13(c), Rules for District Courts of Oklahoma. Because Defendants do not challenge the admissibility of the letter and refer to it as an affidavit, we treat the letter as "acceptable evidentiary material" for purposes of ruling on a summary judgment motion and note that objections may be waived under *Rule 13(c)*.

3. In light of Dr. Lazzara's letter, we do not rely upon Dr. Lazzara's deposition excerpts that were excluded from the record by the trial court. We do not reach Plaintiff's allegation of error in this regard as the issue is not dispositive.